JAMES WOOD, in equity, *vs.* CITY OF AUBURN.

Andróscoggin. Opinion March 13, 1895.

*Equity. Water Company. Regulations. Waiver.*

A water company cannot shut off water from a water taker for non-payment of an old, overdue and disputed installment of water rates, after having accepted payment for a subsequent installment.

*Held;* that the acceptance of payment for a subsequent installment is a waiver of the disputed claim.

The water taker may prevent such action by injunction in equity; nor can the court in such proceeding be required to investigate and determine the merits of the unpaid, and disputed installment. The water company must resort to the court, if it would enforce its claim.

ON REPORT.

This was bill in equity, brought by the complainant against the city of Auburn and its board of Water Commissioners, praying for an injunction to restrain the city from shutting off the complainant's water supply to his several tenement houses.

A brief summary of the bill is as follows:

The complainant alleges that he is the owner of tenement buildings in Auburn, which have been a source of great revenue to him; and that the city of Auburn is the owner and possessor

of the public water supply, and owns and controls the only water supply which can be used by the owners of real estate in the city; that the city is bound and obliged by law to supply water in reasonable quantities upon payment or tender of reasonable compensation; that the city water supply is connected with the complainant's tenements, all of which have been supplied by water from the city system; that the defendants, other than the city, are the board of Water Commissioners, who have the general control and direction of the water system; that the complainant paid water rents for the six months beginning May first, 1893, and ending November first, 1893; that he offered and tendered to the city for use of water from the first day of November, 1893, to the first day of May, 1894, the amount charged by the city; that the city refused to receive the money unless the complainant also paid certain sums of money claimed to be due for the use of water from November first, 1892, to May first, 1893, before the city became the owner and possessor of the water system, which he declined to pay; that thereupon the city and board of Water Commissioners shut off his supply; that he has a claim against the Auburn Aqueduct Company for loss and damage occasioned by short water supply before the city became the owner of its system, which he has a right to set off or recoup against the water rents accruing from the November first, 1892, to May first, 1893; that by the shutting off of water from his tenements he has been greatly injured, etc. He offers to pay the sum of money charged against his tenements for the term beginning November first, 1893, and ending May first, 1894. The above tenders were filed in court. A temporary injunction was issued, and the case came on for a hearing on the question of making the temporary injunction permanent.

After the hearing upon bill, answer, and testimony, the case was reported by agreement of the parties to the law court.

The testimony disclosed that during the winter of 1892-3, by reason of short supply, or from other causes, the Auburn Aqueduct Company were unable to supply the complainant's tenements with water, that thereby, the complainant was put to great loss and expense. He had to abate rents in order to

keep his tenants; and by reason of the want of pressure in the pipes the water froze, and he was put to great expense in repairing pipes and keeping up the water supply, as well as he could; that he communicated his complaints to the Aqueduct Company, who told him to go ahead and do the best he could; that no adjustment was had between him and the Aqueduct Company while they owned the system.

When the city became the owner, the Aqueduct Company turned over to the city the unpaid water bills, including those against the complainant, with the statement that the complainant would make a claim.

*A. R. Savage and H. W. Oakes,* for plaintiff.

The city assumes the right to shut off a citizen's water after offer of payment and tender, not for the purpose enforcing payment of the current water rates, but to collect an old bill, a bill, too, which was not contracted with the city itself, but with its predecessor in title, and to which it has no claim except by assignment; a bill, also, to which the complainant claims to have a fair offset. *Stock* v. *Boston,* 149 Mass. 410.

The rule of the city authorizing the shutting off the water for non-payment clearly means current and not past rents. *Merrimac River Savings Bank* v. *City of Lowell,* 152 Mass. 556.

The city, by becoming owner of this water system, has engaged in the exercise of a public trust, &c. *Lumbard v. Stearns,* 4 Cush. 60.

*J. A. Pulsifer,* city solicitor, for defendant.

The city claims, first, that the contracts to supply water to each of the complainant's buildings are separate and distinct, and for that reason claims the right to shut off the water only from those buildings of the complainant where the water rents are in arrears.

Second, that each of these contracts are continuing ones with rent falling due on them at stated intervals in a manner analogous to interest on a note.

Third, that these contracts can be modified under their terms from time to time by such ordinances, rules and regulations as the city and its board of Water Commissioners may legally enact.

Fourth, that there has been no waiver by the city or any of its agents in its behalf at any time either by its ordinances, rules and regulations, expressly or impliedly, of its right under the original contracts to shut off water for a violation of that same contract by a water taker.

Summing it all up, even if there were any justice in this claim for set off, there would be no statute or rule of law to support this unliquidated claim for damages as a set off against these water bills. *Hall* v. *Glidden*, 39 Maine, 445; *Smith* v. *Ellis*, 29 Maine, 422.

Why should this temporary injunction be made permanent or why should it have been granted at all? The court says in *Russ* v. *Wilson*, 22 Maine, 207: "It is, however, only when the plaintiff has exercised due precaution to prevent an injury that he can be relieved by an injunction." . . . . . · "It is only to prevent mischief, otherwise in a manner irreparable, that this mode of redress can be resorted to." The complainant in this case could have prevented all injury and trouble by paying his water bills; nor do we see any legal impediment in the way of his having his rights in his claim for damages fully determined in an action at law.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, JJ.

EMERY, J.   Mr. Wood, the complainant, has been for some-time the owner of dwelling-houses in Auburn connected with the system of water works formerly owned by the Auburn Aqueduct Company, but now owned by the city of Auburn. For sometime, prior to November 1, 1892, the aqueduct company had supplied water to these houses, and had been paid the regular rates therefor six months in advance on May and November first of each year, agreeably to the regulations of the company. When November 1, 1892, came round, Mr. Wood did not pay or tender the water rates for the ensuing six months as usual. He claimed that water was not being sufficiently supplied, and that in other respects the company was not fulfilling

its duty to him. The company did not shut off the water, but allowed it to run into the complainant's houses during the whole period of that six months ending May 1, 1893.

In May, 1893, the aqueduct company transferred this system of water works, and all its bills against the water takers, to the city of Auburn. Immediately after the transfer, and in the same May, the complainant, Wood, tendered to the proper officer the regular water rates for the then ensuing six months to end November 1, 1893. The city accepted the money and supplied the water for that six months as usual. In November, 1893, Mr. Wood tendered, as before, the water rates for the then next ensuing six months. This time the city refused to receive the money, and notified Mr. Wood that the water would be shut off from his property, unless he also paid the water bills of the old company for the six months between November 1, 1892, and May 1, 1893, which had not been paid, and which had been assigned to the city as above stated. Mr. Wood remonstrated, claiming that nothing was due from him on old bills; but the city insisted, and thereupon he filed this bill to restrain the city from shutting off the water from him.

The complainant concedes that the rules of the old aqueduct company, and of the present city water board, are reasonable, so far as they require him to pay six months in advance. He contends, however, that when the city has taken his money for one six months, paid according to its rules, it has waived any right to use the summary remedy of shutting off water to collect a disputed bill for any prior six months;—that the city has thereby elected to continue him as a water taker, and resort to the usual legal remedies for settling the prior dispute;—that any rule of the water board of Auburn which assumes the power to receive the water taker's money from six months to six months, and then at any time deprive him of water because of an old and disputed bill, is unreasonable and therefore void.

We think this contention must be sustained.

Water companies and municipalities undertaking to supply water to the people have an undeniable right (when not affected by legislation) to impose such reasonable rules as will husband

the supply and economize the use of the water; as will protect the plant and keep up its efficiency; and as will insure a reasonable revenue and its prompt receipt. On the other hand, such companies and municipalities are bound to supply water at reasonable rates to every person within the range of the system of works. Their rules must be reasonable and not oppressive or vexatious. The citizen should not be subject to any whims of the officials. He should have a secure right to the water so long as he promptly pays the current installments, and makes no waste or misuse of the water. So far as appears, Mr. Wood has fully complied with these conditions.

The only trouble is over an old and disputed bill. The aqueduct company could have insisted on payment of this bill in advance, but did not. It could have shut off the water during the time covered by the bill, but did not. It preferred to let the bill and the dispute stand. Its successors, the city, with presumed knowledge of all the facts, did not shut off the water. It accepted Mr. Wood's money for the next installment; furnished water for that six months to him as one within his rights and its rules; allowed him to suppose that the old bill in dispute would be ignored, or would be adjusted as are disputes between other parties. After having resumed these relations with Mr. Wood and taken his money therefor, the city now insists that he shall now be summarily deprived of an instant and constant necessity in order to coerce him into a surrender of his position of defense against the old bill. Assuming that the rules of the old company and of the city contemplate this course, we think they are to that extent unreasonable, and therefore without legal force.

The parties are not upon equal ground. The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer once taken on to the system, becomes dependent on that system for a prime necessity of business, comfort, health and even life. He must have the pure water daily and hourly. To suddenly deprive him of this water, in order to force him to pay an old bill claimed to be unjust, puts him at an enormous disadvantage. He cannot wait for the water. He must surrender and swallow his choking sense of

injustice.  Such a power in a water company or municipality places the consumer at its mercy.  It can always claim that some old bill is unpaid.  The receipt may have been lost, the collector may have embezzled the money ; yet the consumer must pay it again and perhaps still again.  He cannot resist lest he lose the water.

It is said, however, that the consumer can apply to the courts to recover back any sum he is thus compelled to pay, if it was not justly due from him ; or, if he can show affirmatively that it is not a just claim against him, he can by judicial process restrain the company or municipality from shutting off the water. To oblige a person to follow such a course would be a violation of the fundamental juristic principle of proceduie.  That principle is, that the claimant, not the defendant, shall resort to judicial process ;—that he who asserts something to be due him, not he who denies a debt, shall have the burden of judicial action and proof.  It is only in the case of dues to the State that this principle is suspended.

It is said again, that Mr. Wood having resorted to this judicial proceeding, the city may now, in this same proceeding, show that there is no defense to the old bill, and thus justify its action and have the prayer of Mr. Wood denied.  The court cannot be required in this proceeding to investigate and determine whether there is anything due on that old water bill.  The city, or its predecessor, at one time had the right to insist on its payment before furnishing water.  That right as to that bill was waived fully and effectually.  It cannot be resumed at the pleasure of the respondent.  The water must be supplied to the complainant, so long as he will promptly pay current installments and otherwise conform to the reasonable rules governing the supply of water.  The respondent must now in its turn resort to judicial process, if it desires to enforce any further payment.

*Bill sustained with costs.  Injunction made permanent.*