## JONES *v.* NASHVILLE.

## (*Nashville.* December Term, 1902.)

1. **MUNICIPAL CORPORATIONS. No arbitrary rule for testing reasonableness or unreasonableness of ordinances.**

   There is no arbitrary rule by which the reasonableness or unreasonableness of municipal ordinances can be tried and tested, but much depends upon the surrounding circumstances, and the nature, purpose, and operation of the ordinance in question. (*Post, p.* 557.)

2. **PUBLIC SERVICE CORPORATIONS. By-laws of. Same rule applied.**

   The same rule for testing the reasonableness or unreasonableness of municipal ordinances regulating the public service in furnishing water, etc., may be applied to the by-laws of public service corporations for the regulations of their business relations with the public, for such by-laws and ordinances of municipalities are much alike, and largely subject to the same limitations and rules of construction. (*Post pp.* 557-558.)

3. **MUNICIPAL ORDINANCES. General requisites of.**

   Ordinances must be consonant with the constitution and statutes of the United States and of the State, and with the general principles of the common law; they must be authorized by the charter of the corporation or the general laws applying thereto, and consistent with the objects and purposes of its creation; they must be general and applicable alike to all persons and property affected by them, and certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them; they must be just; they should be adapted to the locality and affairs which it is intended they shall control and affect; they must not be harsh and oppressive; they must not discriminate in favor of or against any class of persons

Jones v. Nashville.

or property, but must be general in their nature and impartial in their operation and effect.  (*Post, p.* 558.)

Case cited and approved:  Long *v.* Taxing District, 7 Lea, 137.

**4.  SAME.  Same.  Such   ordinances   are   reasonable   and valid.**

Ordinances free from the objectionable features enumerated, and containing those stated to be necessary, in the last headnote, may, as a general rule, be said to be reasonable and valid.  (*Post, p.* 558.)

**5.  SAME.  Prohibiting supply of water until past due indebtedness therefor is paid, are valid.  Case in judgment.**

An ordinance declaring it unlawful to furnish water to those indebted for water until said indebtedness is discharged, and prohibiting the city officials and employees from providing water to such consumers until all their indebtedness for water previously supplied shall have been discharged, is in conformity with the general rule and principles, and, therefore valid.  (*Post, pp.* 555-568.)

Cases cited and approved:  Watauga Water Co. *v.* Wolfe, 99 Tenn., 432; Wood *v.* City of Auburn (Me.), 32 Atl., 903; 29 L. R. A., 376; Tacoma Hotel Co. *v.* Tacoma Water Co., 3 Wash., 316; Williams *v.* Gas Co. (Mich.), 18 N. W., 236; Shiras *v.* Ewing, 48 Kan., 170; People *v.* Manhattan Gas Light Co., 45 Barb., 136.

Cases distinguished:  Crumley *v.* Watauga Co., 99 Tenn., 420; Merrimac River Savings Bank *v.* Lowell, 26 N. E., 97; 10 L. R. A., 122; Am. Water Works Co. *v.* Nebraska, 64 N. W., 711.

**6.  WATER COMPANIES.  Have power to adopt and enforce reasonable rules denying water to those refusing to comply therewith.**

A water company which is under legal obligation to furnish water to all inhabitants of a city, at designated rates, and without discrimination, may adopt reasonable rules for the conduct of its business and the operation of its plant, and such rules, as far as they affect its patrons, are binding on them and may be enforced even to the extent of denying

Jones v. Nashville.

water to those who refuse to comply therewith.   (*Post, p.* 561.)

Case cited and approved:   Watauga Water Company *v.* Wolfe, 99 Tenn., 432.

7.  **SAME. Same. But cannot refuse water for past indebtedness therefor, where credit has been extended, and the right waived by furnishing water in the meantime; otherwise, where credit has not been extended, nor right waived.**

But an incorporated water company obligated by law and express contract to furnish water to a city and its inhabitants can not arbitrarily refuse to furnish water to an applicant tendering the price as required by its rules, until he should pay an old debt whict he owed the company for piping and water and for which the company had extended him credit by taking his duebill therefor, and had in the meantime, furnished him water; and such company so refusing to furnish water to such applicant is liable to him for his damages incurred by such refusal; but this is not the case where the indebtedness is current and credit has not been extended by a city furnishing water to its inhabitants under an ordinance prohibiting the furnishing of water to those indebted for water previously furnished until the indebtedness therefor shall have been discharged.   (*Post, p.* 562-568.)

Case cited, distinguished and approved:   Crumley *v.* Watauga Water Co., 99 Tenn., 420.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County. J. A. CARTWRIGHT, Judge.

COLYER & DANIEL, for Jones.

PRICE & McCONNICO, for Nashville.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This suit was brought by the plaintiff, Linnie B. Jones, against the city of Nashville to recover $5,000 damages for the failure and refusal of the defendant to supply her with water.  The plaintiff avers in her declaration that the defendant owns and maintains a system of waterworks, built and operated for the purpose of supplying its inhabitants with water; that she has been a resident of the city for some three years past, engaged in the business of keeping a boarding house, in rented premises at several places in the city, and that the defendant has wrongfully and unlawfully declined and refused to supply her with water, at these several places, for the space of some three years, although she, and her landlord and children for her, have tendered the money in payment of the usual and regular charges and rates therefor in advance, and thereby has destroyed her business and greatly damaged her.

The defendant filed two pleas, the general issue of not guilty, and a special plea averring that, under an ordinance of the defendant duly enacted by its mayor and council, it was unlawful, and its officers were prohibited from furnishing and supplying any person, firm, or corporation, with water, indebted to the city for water previously furnished and failing to pay such indebtedness upon the demand of the city authorities

at the place where the indebtedness was contracted, or
at any other place, until such indebtedness should be
discharged, and that, before it failed and refused to
furnish the plaintiff with water, she had become and
was indebted to the defendant for water theretofore
supplied her, which indebtedness she refused to pay
upon proper notice and demand, and that for this rea-
son it had lawfully refused to further supply her with
water.

The sections of the ordinance, which the defendant
pleads in defense of plaintiff's action, necessary to be
stated, are as follows:

"Sec. 381. After the water tax assessment shall
have been completed by the water tax assessor and
turned over to the comptroller for collection, the comp-
troller shall insert twice in each of the daily papers
an advertisement notifying water consumers of the
completion of the water assessment. He shall also
send to the name of each water consumer appearing
on the book, taking street by street, a postal card,
notifying such consumer that, if the tax assessed be
not paid within twenty days from the date of notice,
that the water will be turned off, and in cases of meter
measurement he shall also give the reading of the
meter of each consumer, showing quantity of water
used and the cost thereof; provided, however, that the
making out of the statement and the addressing of the
cards to the respective water consumers shall be done
in the waterworks office, and the board of public works

and affairs are hereby authorized to employ an additional clerk at a salary not to exceed fifty dollars per month to perform this work and such other work as may be required of him.

"Sec. 382. At the expiration of the period named in said card of notice, the water tax assessor shall examine the books of the comptroller wherein is kept a list of the water consumers, and taking street by street, certify therefrom to the board of public works and affairs, the names of all parties who have not paid their water tax, giving names and number of street. This certified list the comptroller shall compare with his books, ascertain its correctness, and add his certificate thereto.

"Sec. 383. Whenever the water tax assessor and comptroller, in the performance of their duty as defined by law, certify to the board of public works and affairs, that any person, firm or corporation, is indebted to the city and is in arrears for water tax, said board is hereby authorized and required to have the water supplied by the city to such person, firm or corporation shut off.

"Sec. 384. The water thus turned off shall not be again turned on, except by officers or employees of the city duly authorized, and in no instance by them, until the entire tax due to the city by such persons, firms or corporations, is paid; provided, however, that all persons, firms or corporations that may be in arrears for two or more assessments at the date of the

passage of this ordinance, shall be required to settle up said delinquency by installments, making at least one payment in amount equal to one of said assessments in the order they appear on the tax books every sixty days. Upon a failure of any delinquent to pay as above required, it shall be the duty of the comptroller to report said failure to the board of public works and affairs, who shall at once have the water turned off, and the water shall not be again turned on until the entire tax due is paid."

"Sec. 408. Whenever any person, firm or corporation becomes indebted to the city for water, and fails, on demand of the city authorities, to discharge said indebtedness, as provided in section 384, it shall not be lawful to furnish water to said firm, person or corporation, at the place where said indebtedness was contracted or at any other place within or without the city, until said indebtedness is discharged."

Sections 384 and 408 contain the provisions which were relied upon by the defendant. The other sections are set forth that the object and purpose of those relied upon, and their bearing upon the management or government of the waterworks department of the defendant, may fully appear.

The plaintiff assails the validity of sections 384 and 408, making it unlawful to furnish persons with water who are indebted for water previously supplied them, after notice and demand of payment, at the place where the indebtedness was contracted, or any

other place, until such indebtedness shall be discharged, upon the ground that they are harsh, oppressive and discriminating in their operation, and therefore unreasonable, in that they authorize and enable the city to coerce and compel its inhabitants receiving their water supply from it to pay past-due indebtedness created for water furnished them, by declining to further supply them with water until such indebtedness is paid, although they may be ready and willing to pay for the water desired, notwithstanding its duty as a public corporation to supply all persons with water who tender the regular rates therefor; and that for this reason said sections are to this extent void, and afford the defendant no protection in this action. The question, therefore, for determination is whether the ordinance in question is reasonable and valid or unreasonable and void, and, there being no controversy as to the facts, it is one of law to be determined by the court.

There is no arbitrary rule by which the reasonableness or unreasonableness of ordinances can be tried and tested, but much depends upon the surrounding circumstances, and the nature, purpose and operation of the ordinance in question. And the same may be said in regard to the by-laws of public-service corporations for the regulation of their business relations with the public, for such by-laws and ordinances of municipalities, of the nature of the one here involved, are much alike, and largely subject to the same

limitations and rules of construction. It may be said generally, that ordinances must be consonant with the constitution and statutes of the United States and of the State, and with the general principles of the common law. They must be authorized by the charter of the corporation or general laws applying thereto, and consistent with the objects and purposes of its creation. They must be general, and applicable alike to all persons and property affected by them, and certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them. They must be just. And they should be adapted to the locality and affairs which it is intended they shall control and affect. They must not be harsh and oppressive. They must not discriminate in favor of or against any class of persons or property, but must be general in their nature, and impartial in their operation and effect. *Long* v. *Taxing District,* 7 Lea, 137 (40 Am. Rep., 55); Dillon, Mun. Corp., vol. 1, secs. 319-330; Am. & Eng. Ency. of Law, vol. 21, pp. 985-987.

An ordinance which is free from the objectionable features enumerated, and contains those stated to be necessary, may, as a general rule, be said to be reasonable and valid. The material and operative parts of the ordinance complained of are as follows: (1) That when the water has been turned off, after the period of delinquency has expired, and the party has been notified to pay and has failed, it shall not be

Jones v. Nashville.

again turned on except by officers or employees of the city duly authorized, and in no instance by them until the entire tax due the city has been paid.  (2) That whenever any person, firm or corporation becomes indebted to the city for water, and fails, on demand of the city authorities, to discharge said indebtedness, as provided in section 384 above quoted, it shall not be lawful to furnish water to said firm, person or corporation, at the place where the said indebtedness was contracted, or any other place within or without the city, until said indebtedness is discharged.  The specific ground of attack upon it is that the provisions prohibiting the city from supplying any one with water indebted to it for water furnished them, which indebtedness they have failed to discharge after notice and demand, at the place where the indebtedness accrued or any other place within or without the city, enables the city to coerce the payment of past-due indebtedness, and that for this reason it is oppressive and discriminates against those in arrears for water.

We do not think the ordinance subject to this criticism.  It is clearly consistent with the law and within the powers conferred upon the city by its charter, and contributes toward effecting the ends and purposes of its incorporation.  It is general in its scope and application, and uniform in its operation.  Every inhabitant of the city is secured a continuous supply of water by complying with its provisions, and any of them, regardless of their circumstances in life, will

be refused water upon their failure to observe them. Its execution is certain, and nothing is left to the discretion or caprice of the officers of the defendant. It is just, in that it provides that all the inhabitants of the city shall pay their proper proportions of the expense of this almost indispensable public service. It is plain and unambiguous in its terms, and all parties are informed by it upon what terms they will be supplied with water, and under what circumstances, and when the supply will cease. Everything is certain and definite. A notice is required to be given of the amount due and the time within which payment must be made before the supply is turned off, and no one can be taken by surprise, or should be unprepared to meet their just dues for the service rendered them. Again, the ordinance contributes to the economical and prompt collection of the water assessments, and is almost necessary for that purpose, as, without it, not only would the city be delayed in the collection of the assessments, but would be put to the expense of a multitude of petty suits annoying to it and harassing to its inhabitants, and would suffer great loss on account of insolvencies. The assessment required to be paid is not a past-due indebtedness in the sense contended for by the plaintiff, but the dues for water recently and then being furnished. It is, to all intents and purposes, a current charge. We see nothing harsh and oppressive or discriminating in this ordinance, but we are of the opinion that it is reasonable and

valid, and that its enforcement against the plaintiff furnishes her no legal cause of complaint against the defendant. In this conclusion we are sustained by precedent in this and other States.

In the case of *Watauga Water Co.* v. *Wolfe,* 99 Tenn., p. 432 (41 S. W., 1060; 63 Am. St. Rep., 841), it is said: "A water company which is under legal obligation to furnish water to all inhabitants of a city at designated rates, and without discrimination, may adopt reasonable rules for the conduct of its business and the operation of its plant, and such rules, so far as they affect its patrons, are binding on them and may be enforced even to the extent of denying water to those who refuse to comply therewith."

In the case of *Wood* v. *The City of Auburn* (Me.), 32 Atl., 906; 29 L. R. A., 376, it is said: "Water companies and municipalities undertaking to supply water to the people have an undeniable right, when not affected by legislation, to impose such reasonable rules as will husband the supply and economize the use of the water, as well as protect the plant, keep up its efficiency, and as will insure a reasonable revenue and its prompt receipt."

In *Tacoma Hotel Co.* v. *Tacoma Light & Water Co.,* 3 Wash., 316 (28 Pac., 516; 14 L. R. A., 669; 28 Am. St. Rep.), it was held that: "A rule of the water company which requires water rates to be paid quarterly, adds a penalty of five per cent. in case of default of payment in ten days, and provides that after

default for fifteen days the water shall be shut off from the premises, is a reasonable regulation."

In *Williams* v. *Mutual Gas Co.* (Mich.), 18 N. W., 236 (50 Am. Rep., 266), it is said: "The requirement of a deposit of money to guaranty the payment of the price of gas used is not an unreasonable one, and the company may discontinue furnishing the gas unless complied with."

In *Shiras* v. *Ewing,* 48 Kan., 170 (29 Pac., 320), a rule of the water company giving it the right to shut off water from the premises of the consumer who wastes it was held reasonable, and sustained.

In *People* v. *Manhattan Gas Light Co.,* 45 Barb., 136, the right of a gas company to refuse to furnish a customer with gas until he paid his past-due gas bill was affirmed.

The view we have taken of this ordinance is not in conflict with the case of *Crumley* v. *Watauga Co.,* 99 Tenn., 420 (41 S. W., 1058), which is relied upon by counsel for plaintiff to sustain this action, as a very different question was there presented. In that case, the Watauga Water Company arbitrarily refused to furnish the plaintiff, Crumley, with water until he should pay an old debt, which he owed the company, consisting of the sum of $11 for piping and $4 for water rents. The facts showed that in 1894 and 1895, Crumley, who was a citizen of Johnson City, and a patron of the company, became its debtor in the sums aforesaid for piping and water rent. The

Jones v. Nashville.

two sums were consolidated, and the plaintiff gave the company his duebill for the aggregate of $15. Thereafter he received water from the company for several months, and paid the required charges. Then, for a short time, he did not take the company's water. In August, 1896, he decided to take it again, and requested the proper representative of the company to turn the water into the hydrant at his residence in the city, at the same time tendering the price of one quarter's rent in advance, according to the rules of the company. This request was refused, and he was denied the benefit of the company's water unless he should pay the whole, or at least part, of his old outstanding duebill. He failed to pay any part of the duebill, and the company refused to supply the water. One month later he commenced his action to recover damages.

This court properly held that the defendant water company, being a public corporation, charged with the performance of certain duties in which the public was interested, and having made and entered into a contract with Johnson City to furnish the inhabitants with a plentiful supply of water, could not arbitrarily refuse to furnish the plaintiff with water when he tendered the price therefor a quarter in advance as required by the rules of the company, when the only reason assigned for refusal to furnish him water was that he had not paid an old bill which he owed the company, which he had been allowed to set-

tle by a duebill, and afterward receive water and pay for the same. In this case it is said: "The defendant, Watauga Water Company, is a public corporation, as contradistinguished from a private corporation. By the law of its creation it was charged with the imperative duty of erecting waterworks and machinery of sufficient capacity to furnish Johnson City and the inhabitants thereof with a plentiful supply of water; and by its contract with that city it bound itself to furnish an ample supply of water for the use of the city, and for families and domestic purposes. Thereby it assumed, first, by necessary implication of law, and, secondly, by express contract, to furnish water to all the inhabitants of the city upon reasonable terms, and without discrimination. From which it follows that the company breached its duty toward Crumley in refusing to let him have water upon its regular rates, and, as a legal consequence, became liable to him in damages for whatever injuries he sustained as the proximate cause of the breach. These views are not without abundant support in the authorities. . . . The defendant in the present case can not justify its declination to furnish water to the plaintiff by the facts of his failure to pay the whole or a part of his outstanding duebill given for water and piping furnished a year or two before. Upon tender of the regular rates, he was entitled to water like other persons, and without reference to his past-due obligation. The company had given him credit for the

matters covered by the duebill, and could not there-
after coerce payment by denying him a present legal
right."

This case is, therefore, merely authority for the
proposition that a water company, under the duty im-
posed upon it by positive law, and assumed by it by
express contract to furnish citizens of a city with
water, can not arbitrarily refuse to furnish a citizen
with water who tenders the price therefor, in con-
formity with the rules of the company, and put its
declination upon the ground that the citizen owed it
an old bill for which it had given the party credit years
before it had refused to furnish him water, and had
actually furnished him water between the date of its
acceptance of his duebill and the date of the refusal
complained of, and has no application to a case like
this.

The case of *Merrimac River Savings Bank* v. *City
of Lowell* (Mass.), 26 N. E., 97 (10 L. R. A., 122),
cited by the plaintiff, only sustains the proposition
that "a city or town which is authorized by statute
to furnish water to its inhabitants, to be paid for by
them, and which has received from the householder
payment in advance for water to be furnished, and
then arbitrarily cut off his supply, can be held liable
for damages in an action at law."

In this case water has been furnished for the year,
commencing April 1, 1886, and was not paid for as
required by the ordinance, and on January 13, 1887,

the plaintiff, having a mortgage on the premises, entered to foreclose it, and afterwards continued in possession. On June 3, 1887, the plaintiff paid the full amount of the water rates for the year commencing April 1, 1887, and on September 3, 1887, the water was shut off for nonpayment of the rates assessed for the year commencing April 1, 1886. The water had not been cut off during the year for which the unpaid assessment was made, and at the time it was cut off it was being furnished for a term for which the city had received from the plaintiff payment in advance. The court, among other things, said: "The receipt of this money amounted to a contract, or created a duty, to furnish plaintiff with the water throughout the year, in the manner contemplated by the statute, so far as it could be done, by making a reasonable effort to perform the duty which the city had assumed, and precluded the city from afterwards cutting off the water under its ordinance on account of failure of his predecessor in title to pay the rent for the former year. Whether, if the water had previously been cut off under the ordinance, the plaintiff could have compelled the city to turn it on without payment of the amount due for the previous year, it is unnecessary to decide."

It will be seen that in this case, just as in the Watauga Water Co. case, in 99 Tenn., 422 (41 S. W., 1058), the city, after delinquency had occurred, had received the plaintiff's money, turned on the water,

and, during the period for which it had received his money, arbitrarily cut off the water and broke its contract to furnish him water during a given period, in an effort to coerce the plaintiff into paying the past-due debt. The city in this case was not acting under any ordinance the reasonableness of which was before the court for consideration, but it was just a case of where the city had broken its contract. While the court says that the point is not before it for decision whether the city would have been justified originally in not turning on the water until the past-due debt was paid, under the city ordinance, the inference is that if this question had been before the court it would have decided it favorably to the contentions of the defendant in this case.

The case of *James Wood* v. *The City of Auburn* (Me.), 32 Atl., 906 (29 L. R. A., 376), cited in the Watauga Water Co. case, and relied upon by counsel for plaintiff, is only authority for the proposition "that a city which has undertaken to furnish its inhabitants with water can not, after accepting the rates and furnishing water to a consumer for a period beyond that for which a disputed unpaid claim against him exists, shut off the supply for the purpose of coercing payment of such claim."

The case of *American Waterworks Co.* v. *State of Nebraska ex rel., etc.* (Neb.), 64 N. W., 711 (30 L. R. A., 447; 50 Am. St. Rep., 610), also relied upon by plaintiff, decides in substance that a rule of a private

corporation, engaged in supplying a city and its inhabitants with water in pursuance of a franchise granted by such city, to the effect that "water rents shall be due and payable on the first day of January and July of each year, in advance, at the company's office, and, if not paid within thirty days after they fall due, the water will be turned off, and not turned on again until all back rents are paid, including a charge of one dollar for turning the water off and on," to be unreasonable, so far as it required a patron in default of water rents to pay $1 as a condition precedent to his right to again be furnished with water, and void.

In so far as this case touches the question involved in the case at bar, it is in accord with our conclusion. The court intimates that, in so far as the company's rule provides that the water shall not be turned on again until all back rents are paid, the rule is valid; but holds that it is invalid and void to the extent that it requires a fee of $1 to be paid by water consumers for making connections after water had been turned off for delinquency.

We are, therefore, of the opinion that there is no error in the judgment of the circuit court dismissing the action of the plaintiff, and the judgment of that court is affirmed, with costs.