PABST CORPORATION, Appellant, vs. CITY OF MILWAUKEE and another, Respondents.

*March 9—October 11, 1927.*

*Municipal waterworks: Regulation as public utility: Mistaken conception of law: Treating city rendering service as municipal proprietor: Estoppel: Voluntary payments of water rents: Treble damages: Law of the case.*

1. The "law of the case" consists, not in the reasoning of the court on a former appeal, or the illustrations given, but in the propositions of law actually decided and applicable to the facts in judgment. p. 524.

2. Where increased water rates established by the city of Milwaukee were illegal, it was liable under sec. 196.64, Stats., to the person, firm, or corporation injured thereby in treble the amount of damages sustained, unless the right to recover was barred by laches or lost through the fact that such rates were voluntarily paid. pp. 524, 525.

3. The payment of water rates to a city under a threat that service will be cut off is compulsory, so that recovery of the amount paid under the excessive rates, under sec. 196.64, Stats., is not barred on the ground that the payment was voluntary. The fact that a consumer may resort to equity to enjoin the collection of an illegal water rate does not make the payment of such illegal rate without resort to equity a voluntary one. pp. 525–527.

4. Where a city collects its water rates it is acting in a proprietary capacity, and not as a governmental agency of the state. p. 527.

5. One making fifteen payments of water rates to the city of Milwaukee as if it were a municipal proprietor, without questioning the city's right to establish and collect such rates, is estopped to question its power to establish such rates by suing for treble damages, under sec. 196.64, Stats., for excessive rates, notwithstanding ch. 279 of the Laws of 1919, where the city acted in good faith under a mistaken belief that such chapter exempted the city from the public utility act. p. 528.

6. In an action by a consumer against a city to restrain the collection of an excessive water rate and to recover treble damages under sec. 196.64, Stats., the judgment properly enjoined the collection of any rate in excess of that enforceable April 1, 1907, until such rates have been changed in the manner provided by the public utility law, p. 529.

APPEAL from a judgment of the circuit court for Milwaukee county: CHARLES L. AARONS, Circuit Judge. *Affirmed.*

Action by the *Pabst Corporation* against the city of *Milwaukee* to restrain the city from collecting water rates which had not been approved by the railroad commission and to recover treble damages under sec. 196.64 of the Statutes. From a judgment denying recovery the *Pabst Corporation* appealed.

This action was before this court upon demurrer to the answer. It was held in 190 Wis. 349, 208 N. W. 493, that the waterworks operated by the city of *Milwaukee* was a public utility and that the city could not increase its water rates without complying with the requirements of the public utility law.

Upon return of the record the case was tried upon the merits and judgment entered holding that the *Pabst Cor-. poration* had no right to recover either the amounts paid in excess of legally established rates or the treble damages provided for by statute.

For the appellant there was a brief by *Lines, Spooner & Quarles* and *Glicksman & Gold,* attorneys, and *H. J. Killilea* and *F. E. Jenkins,* of counsel, all of Milwaukee, and oral argument by *Mr. Charles B. Quarles, Mr. Louis Quarles,* and *Mr. Killilea.*

*John M. Niven,* city attorney, and *Clifton Williams,* special assistant city attorney, for respondents.

A brief was also filed by *Leon B. Lamfrom* of Milwaukee as *amicus curiæ.*

The following opinion was filed May 3, 1927:

STEVENS, J.   (1) When this action was before the court upon demurrer to the answer, the question was presented whether the waterworks operated by the city of *Milwaukee* was subject to regulation by the state as a public utility. That was the question decided, and the decision of the court on that question is the law in this case. "The 'law of the case' consists, not in the reasoning of the court or the illustrations given, but in the propositions of law actually decided and applicable to the facts in judgment." *Heidt v. Minor,* 113 Cal. 385, 390, 45 Pac. 700, 701. All other questions were left open for future consideration and the cause was remanded "for further proceedings." There was no attempt to determine that the rates adopted by the city on January 1, 1921, would have been legal and effective if the ten-day notice required by sec. 196.20 of the Statutes had been given. The purpose was simply to call attention to the fact that the first step essential to put the rates in effect had not been taken.

(2) The increased water rates established by the city in 1921 were illegal and the city is liable under the provisions

of sec. 196.64 "to the person, firm or corporation injured thereby in treble the amount of damages sustained in consequence" of the collection of such excessive water rates, unless the right to recover is barred by laches or lost through the fact that such water rates were voluntarily paid.

Each time that the payment of the increased rate was demanded by the city, such demand was accompanied by notice that if the amount of the bill rendered was not paid within thirty-one days the city would shut off the water supply of the consumer. Under such circumstances "the parties are not upon equal ground. The city, as a water company, cannot do as it will with its water. It owes a duty to each consumer. The consumer, once taken on to the system, becomes dependent on that system for a prime necessity of business, comfort, health, and even life. He must have the pure water daily and hourly. To suddenly deprive him of this water, in order to force him to pay an old bill claimed to be unjust, puts him at an enormous disadvantage. He cannot wait for the water. He must surrender, and swallow his choking sense of injustice. Such a power in a water company or municipality places the consumer at its mercy." *Wood v. Auburn,* 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376, 377.

The modern city dweller is absolutely dependent upon the system of public water supply for all domestic and sanitary needs. He can no longer resort to the town pump, and, if he could, he would hesitate to use the water from a well located in a congested urban area for domestic uses, and it would be difficult, if not impossible, to use it for sanitary purposes. A constant supply of pure water is almost as essential to modern city life as is the air we breathe. This is equally true in the case of a corporation like the plaintiff which must have a constant supply of water in order to prosecute its business. Such corporation has no choice. It must submit to the exaction of an illegal rate or suspend its business operations if its water supply is cut off. Payments

made under such circumstances are compulsory, not voluntary. *Boston v. Edison E. I. Co.* 242 Mass. 305, 310, 136 N. E. 113; *St. Louis B. Asso. v. St. Louis,* 140 Mo. 419, 424, 37 S. W. 525, 526; *American B. Co. v. St. Louis,* 187 Mo. 367, 86 S. W. 129, 132, 133.   See, also, *Swift Co. v. U. S.* 111 U. S. 22, 28, 29, 4 Sup. Ct. 244.

"It is the well settled rule of this state that, where one is compelled to make payment of money which the party demanding has no legal right to receive, in order to prevent injury to his person, business, or property, such payment is, in law, made under duress, and may be recovered from the party receiving it; and it makes no difference that the payment was made with full knowledge of all the facts, provided it was made under duress." *Chicago v. Northwestern Mut. L. Ins. Co.* 218 Ill. 40, 75 N. E. 803, 1 L. R. A. N. S. 770, 772.   When excessive water rates are paid because of a threat to turn off the water if they are not paid, such payment is "as much under compulsion as if the city officials had been armed with a warrant for the arrest of the person or the seizure of goods, in which case but one opinion would be entertained as to the nature of the payment if made." *Westlake & Button v. St. Louis,* 77 Mo. 47, 50, 51.

When payment is made under threat to shut off the water supply of the consumer if the payment is not made, it would be superfluous to require payment under protest as a condition precedent to the recovery of the excess payment.   To object or protest under such circumstances would be an idle waste of words.   The law looks to the substance of things and does not require useless forms or ceremonies.   "Ordinarily, protest is the best evidence of compulsion or unwillingness to pay, and it is usually expected where the payment is made to one who has a right to make terms with the payor; but where protest would be useless it is superfluous. . . . Compulsion may appear from the circumstances and not from any expression of unwillingness or protest

against a payment." *Illinois G. Co. v. Chicago Tel. Co.* 234 Ill. 535, 85 N. E. 200, 18 L. R. A. N. S. 124, 131.

"The old rule that there could be duress only where there was a threat of loss of life, limb, or liberty has been· so· changed that duress may sometimes be implied when a payment is made or an act performed to prevent great property loss or heavy penalties when there seems no adequate remedy except to submit to an unjust or illegal demand and then seek redress in the courts." *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 183 Wis. 47, 56, 197 N. W. 352.

The fact that a consumer may resort to equity to enjoin the collection of an illegal water rate does not make the payment of such illegal rate without resort to equity a voluntary one which will bar recovery of the excess paid. · For ·the small consumer the cost of such proceeding in equity would be so out of proportion to the amount involved as to be prohibitive. To hold that a public utility supplying an absolute necessity of modern urban life can compel a consumer to pay excessive and illegal rates under a threat of depriving the consumer of the service and then defeat recovery for the excess illegally collected because the consumer has not resorted to a suit in equity, "would be a violation of the fundamental juristic principle of procedure. That principle · is that the claimant, not the defendant, shall resort to judicial process; that he who asserts something to be due him, not he who denies a debt, shall have the burden of judicial action and proof. It is only in the case of dues to the state that this principle is suspended." *Wood v. Auburn,* 87 Me. 287, 293, 32 Atl. 906, 29 L. R. A. 376, 377, 378. When the city is collecting its water rates it is acting in its proprietary capacity and not as a governmental agency of the state.

(3) The case stands in a class by itself because the city and the patrons of its municipal water plant acted in good faith for some years under the mistaken belief that ch. 279,

Laws of 1919, took the waterworks of the city of *Milwau-kee* out of the control of the railroad commission and exempted the city from the provisions of the law regulating public utilities in Wisconsin. Apparently the railroad commission gave this act the same construction.

There is no proof that the rates collected by the city since 1921 are unreasonable or that they would have been held excessive if legally adopted. The fact that the railroad commission has entered an order permitting the establishment of the same rates that have been collected since 1921 tends to show that the rates actually collected by the city were in fact reasonable. But for the passage of the public utility act the rates collected would have been legal and their collection would have subjected the city to no penalty under the provisions of sec. 196.64 of the Statutes.

The plaintiff corporation made fifteen separate payments of the rates which the city put in force January 1, 1921, before it questioned the right of the city to establish and collect such rates. The plaintiff corporation, after having dealt with the city for so long a period as if it were a municipal proprietor with full power to establish its water rates, is now estopped to raise the question that it did not possess such power because it was in fact a public utility. The rule which controls is analogous to that which applies to one who had dealt with an association in such a way as to recognize and in legal effect to admit its legal existence as a corporate body and estop him from denying corporate existence in any action arising out of such dealings. *Citizens Bank v. Jones,* 117 Wis. 446, 453, 454, 94 N. W. 329; *Gilman v. Druse,* 111 Wis. 400, 408, 87 N. W. 557; *Whitney v. Robinson,* 53 Wis. 309, 316, 10 N. W. 512.

After having dealt with the city for so long a time as if it were a municipal proprietor, not subject to regulation by the state, the plaintiff corporation ought not in justice and equity to be permitted to assert that the city was not acting

in such capacity for the purpose of subjecting the city to such a harsh penalty as the payment of treble damages.

(4) The judgment properly enjoined the collection of any rate in excess of that in force on April 1, 1907, until such time as such rates have been changed in the manner provided by the public utility law.   When such change is made the injunctional order by its terms will cease to restrain the city from collecting the new rate.

*By the Court.*—Judgment affirmed.

The following opinion was filed October 12, 1927:

PER CURIAM (*on motion for rehearing*).   Appellant's motion for rehearing presents two questions not discussed in the opinion filed in this case.

1. That the court made findings which are wholly unsupported by the evidence.

The recital of facts contained in the opinion are not findings of fact.   They are merely a statement of the facts established upon the trial upon which the court based its decision.   With the single exception of the statement that the patrons of the plant have dealt with it since it was first established as if the city had full power to fix rates, the facts stated in the opinion are based upon the findings of the trial court or upon facts which were not in controversy upon the trial.   The opinion has been corrected by striking therefrom this single erroneous statement of fact.

The findings of the trial court were not questioned upon the argument of the case, nor were these findings challenged as being unsupported by the evidence by any assignment of error.   This question now raised by appellant for the first time is therefore not properly before the court.   But in view of the importance of the case and of the court's desire that every question involved should be determined on this appeal, the court has given as careful consideration to this question

as if it had been raised by the proper assignment of error and argued at the time when that question should have been presented.

An examination of the record discloses that the facts admitted, either by stipulation or by pleadings, together with those facts conceded by both parties upon the trial, establish the facts found by the trial court and stated by this court as a basis for its decision. Appellant by a formal written stipulation expressly admitted the controlling fact upon which the decision was based, that is, that the appellant pursued a course of dealing with the city under which it made fifteen consecutive payments of water rents under the increased schedule of rates without protest.

2. Appellant urges that this court should direct the entry of judgment for the excess of increased rates over the rate which prevailed before January 1, 1921.

Unquestionably under a proper state of facts the appellant might recover this excess under a complaint which demanded the payment of treble damages. *Oconto County v. Union Mfg. Co.* 190 Wis. 44, 208 N. W. 989. But the fundamental principles of estoppel upon which the decision was based are not changed by the fact that appellant may see fit to reduce the amount of its demand against the city. In either case the appellant's course of conduct is such that it ought not to be allowed to recover money which it paid to the city without questioning the right of the city to collect it and which it permitted the city to expend for the benefit of all patrons of the municipal plant, including the appellant, without notice of any kind that it questioned the power of the city to establish the new rate or to collect the increased rate which was paid by the appellant without protest.

The motion for a rehearing is denied, with $25 costs.