14349

SIMONS v. CITY COUNCIL OF CHARLESTON *ET AL.*

(187 S. E., 545)

*Messrs. Nathans & Sinkler,* for petitioner,

*Mr. J. Waties Waring,* for respondents,

September 5, 1936.

*Per curiam.*

This matter, heard by permission in the original jurisdiction of the Court, is a controversy without action, under Section 668 of the Code of 1932, being submitted upon an agreed case containing the facts on which the controversy depends.

It appears that the city council of Charleston has no special authority, under the charter granted it in 1783, for constructing, operating, and maintaining a waterworks system, but that this corporate right is given it under Section 5 of Article 8 of the Constitution and Sections 7280 and 7327 of the Code of 1932. Pursuant to the authority so given, some years ago a system of waterworks for the city was established and commissioners of public works were elected. These commissioners, upon whom is devolved the management and control of the waterworks system and the fixing of rates, in order to increase the water supply, have recently decided to make direct connection with the Edisto River, which will entail an outlay of about $1,000,000.00. In order to provide for this sum, a petition was filed, as required, with the council by a majority of the freeholders of the city, in pursuance of which an election was held on August 10, 1936, such election resulting in favor of the issuance of bonds not to exceed the sum of $1,000,000.00, the proceeds to be used for the purpose named. Thereafter, the council adopted an ordinance, providing that both the full faith, credit, and taxing power of the city and the net revenue derived from its system of waterworks should be pledged for the payment of the bonds, this specific pledge and also an agreement for the maintenance of rates as contained in the ordinance to be embodied in the bonds when issued.

The petitioner, a taxpayer and water consumer of the city, states in her petition the facts above set forth, and alleges that the pledge of the net revenue as contemplated is *ultra vires,* and that the agreement to maintain water rates sufficient to meet the payment of the bonds would necessitate the imposition upon water consumers of an unreasonable rate.

The respondents contend that the provisions of the charter, which give the city the power to make and establish in general every other by-law or regulation, as shall appear to them necessary to the security, welfare, or convenience of the

municipality, is ample authority for the city to make this contract. They also argue that in the absence of any express inhibition, the power to make the pledge is implied from the inherent powers vested in the body to control municipal affairs.

The first question presented for our decision is whether a municipality has power to make a pledge of income derived from a revenue-producing project in the absence of specific statutory grant of authority. As we have seen, power is given to a city or town by Section 5 of Article 8 of the Constitution to acquire, by construction or purchase, and to operate a waterworks system, the management of such system being vested in the commissioners of public works by Section 7283 of the Code of 1932. However, this commission is but an agency of the city or town, having no greater authority than its principal. *Hyans v. Carroll,* 146 S. C., 470, 144 S. E., 153. In the case at bar it is agreed that the commissioners have acceded to the request of the municipality and have adopted resolutions confirming the action of the city, and at the same time have consented to pledge the net revenues for the payment of the bonds proposed to be issued.

A reading of the statutes, complementing the constitutional provision authorizing the creation of waterworks systems, discloses that they do not restrict the method in which payment may·be made. Sections 7284 and 7329 of the Code merely authorize a municipality to levy an annual tax; and the contention is made that the language of these statutes contains an implication that a municipality would have the right to use income from a revenue-raising project to meet the cost of such a project. It has been held by this Court that "municipal corporations have only such powers as are granted to them by the Constitution or by statute, either expressly or by necessary implication." *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 875, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754.

In 1 Dillon on Municipal Corporations, Section 89, we find the following, quoted with approval in the *Luther case:* "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

It does not follow, however, from the foregoing that a municipality had no discretionary power. The Courts recognize the difficulty of obtaining legislative sanction for every corporate act. This is particularly true in cases where a city or town as such is engaged in the operation of a business. In such case, it is incumbent upon a municipal corporation to exercise its judgment in a manner that will inure to the greatest benefit of the city and its inhabitants. In the operation of such business, it is permitted some exercise of sound discretion.

In Pond on Public Utilities, Third Edition, 16, we find: "The municipal corporation in its private proprietary and essentially business or commercial aspect acts as a property owner. * * * and may exercise its business powers very much in the same manner as a private individual or corporation."

In the case at bar, as already indicated, the city council of Charleston desires, by using revenues derived from its waterworks system, to repay the costs of a necessary extension of that system. It is not denied that the method adopted will be a relief to its general taxpayers, or that the plan sought to be followed is not prohibited by the Constitution or by statute. It seems to us that, in the light of the admitted facts and of applicable principles of law, the choice of the proposed method is within the discretion of the city council, and

so long as the revenues it uses for the purpose named are derived from "reasonable" rates, the Court will not interfere with the discretion sought to be exercised. We conclude, therefore, and so hold, that the city council of Charleston may pledge for the purpose named, in addition to the full faith, credit, and taxing power of that municipality, the net revenues derived from its waterworks system, as it proposes and here seeks to do.

But the petitioner claims, which is the second question presented, that the maintenance of rates sufficiently high to produce the necessary income to pay the principal of and interest on the proposed bonds must, as a matter of law, make the rates now charged by the city council unreasonable.

As we have heretofore pointed out, the Constitution, while investing municipalities with the right to operate waterworks systems, has limited their power to charge, by directing that "reasonable" rates must be maintained. But even in the absence of this constitutional restriction, the Court would hold that the rates charged must be reasonable. A waterworks is a public utility, and it makes no difference whether such utility be operated by a municipality or by a private corporation. Both are bound by the rule of reasonableness. As stated in 6 McQuillin on Water and Water Rights, 654, "municipally owned water works stand in no better position in regard to water rates than privately owned systems." See, also, 27 R. C. L., 1443.

The petitioner's idea seems to be that "reasonableness" contemplates a rate sufficient only to maintain and operate a system, which would mean that the cost of the erection of the original system, and any necessary additions, must come from the general tax fund. If that is her position, she has mistaken the nature of a water rent, which is not in any just sense a tax. "Water rates are imposed and collected merely as compensation or equivalent to be paid, by those who choose to receive and use the water." 27 R. C. L., 1436. A municipality may charge a rate that will yield a fair profit, just the same as a private corpora-

tion. The fact that it makes a profit does not show that the rate is unreasonable. The service received is the test. 67 C. J., 1243.

It appears from the agreed statement of facts that ██ the city council of Charleston has entered into an advantageous contract with a syndicate of bond houses. The cost of paying for the aqueduct to the Edisto River, necessary to insure at all times to the City of Charleston and public enterprises nearby an adequate supply of water, will be paid back over a period of 40 years, at the interest rate of 3 per cent. per annum. The bond issue is a serial one, and the average annual aggregate repayment of principal and interest is but 4.1 per cent. which seems to be a very moderate figure.

In recent years statutes have been enacted by the Legislature authorizing the execution by municipalities of what is known as "revenue bonds," such bonds to be paid solely out of the revenues of the system for the construction, erection, maintenance, or extension of which the indebtedness is incurred, and among these is included waterworks systems. These acts provide that a rate creating the revenue to be maintained at such amount would be proper and necessary for the payment of such indebtedness. See 38 St. at Large, p. 411; *Cathcart v. City of Columbia,* 170 S. C., 362, 170 S. E., 435.

In the case at bar, it is claimed that there will in all probability be no necessity for increasing water rates. Whether this should turn out to be true or not, we hold, for the reasons stated, that the imposition and maintenance of rates sufficient to produce the necessary income to pay the bonds, principal and interest, when and as due, would be reasonable, and not in violation of any constitutional provision. As we have already pointed out, the commissioners of public works are merely the agents of the city or town, and their acquiescence in the contract here made by the municipality is not *ultra vires.* Upon full consideration of the entire matter, we

are of opinion that the relief prayed for by the petitioner must be denied.

The judgment of the Court, therefore, is that the temporary injunction heretofore issued be dissolved and the petition dismissed. And it is so ordered.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate.