548

CITIES SERVICE GAS CO. v. FEDERAL
POWER COMMISSION et al.

No. 2813.

United States Court of Appeals
Tenth Circuit.

July 30, 1949.

Phillips, Chief Judge, dissented.

Arch A. Johnson, Springfield, Mo., appeared for Petitioners in Intervention.

Charles L. Chalender and A. P. Stone, Jr., Springfield, Mo., appeared for the Board of Public Utilities of the City of Springfield, Missouri.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge, delivered the opinion of the court.

This matter comes on at this time upon the petition of M. D. Lightfoot and twelve others named with him in the petition as a class action for the benefit of all the ultimate gas consumers of Springfield, Missouri, served by the City Utilities of the City of Springfield, Missouri, a municipally owned gas distributing company, for leave to intervene in this action.[1]

The matter arises in the following way. Pursuant to extensive hearings, the Fed-

1. The petitioners will be referred to as the ultimate gas consumers and the respondent as Springfield.

eral Power Commission issued an order July 28, 1943, directing the Cities Service Gas Company, an interstate wholesaler of natural gas to reduce its rates for or in connection with its transportation and sale of natural gas in interstate commerce for resale for ultimate public consumption, effective as of September 1, 1943. After exhausting its administrative remedies, Cities Service instituted this action for a review of the Commission's order and requested a stay of the order pending a determination of the issues. A stay order was entered requiring Cities Service, however to pay monthly into the First National Bank of Denver, the depository selected by the court, the amount representing the difference between the old rate and the new rate ordered by the Commission pending the determination of the action. A further condition of the order was that.

"Upon the final determination of this proceeding on review, such moneys shall be paid out in such manner and in such amounts as this court by further order shall direct, to the persons finally adjudged in this review proceeding to be entitled thereto and in accordance with the final adjudication with respect to the Commission's order. And in the event the amounts so deposited shall be insufficient to satisfy fully the amounts adjudged to be refunded, the Cities Service Gas Company shall deposit sufficient additional moneys to satisfy the refunds ordered."

On April 30, 1946, this court affirmed the order of the Commission (155 F.2d 694). The petition of Cities Service to the Supreme Court for certiorari was denied on November 12, 1946, 329 U.S. 773, 67 S.Ct. 191, 91 L.Ed. 664, and a rehearing also was denied, 329 U.S. 832, 67 S.Ct. 489, 91 L. Ed. 705.

Thereupon new schedules of rates were filed by Cities Service in compliance with the order of the Commission and were approved by the Commission on May 2, 1947, effective as to all bills regularly rendered on and after September 1, 1943. Thereafter on July 3, 1947, this court, after notice to all parties, including distributors who purchased gas from Cities Service, towns and communities served by them, entered an order determining the total amount of excess charges and directing a refund thereof to the ultimate consumers, excepting a small number of distributors, including Springfield. The Board of Public Utilities of Springfield filed a claim for all the refund due from the sale of gas to the distributing company serving Springfield.

Pursuant to the order of the court, the Master, appointed by it, on August 4, 1947, filed a plan for the distribution of the impounded funds. The consideration of the proposed plan was set for hearing at 10 o'clock A.M. on August 19, 1947. Notice was widely published in newspapers throughout the refund area directed "To all parties herein; to all distributing companies and municipal 'city-gate' purchasers of natural gas from Cities Service Gas Company; and all other persons having or claiming by, through or under any of the parties hereto, or any of the 'city-gate' purchasers of natural gas, or otherwise, any right or interest in this cause, or in the funds heretofore or now impounded, or in the disposition and distribution of said funds or any part thereof or in the manner or method of such disposition and distribution." In addition an order was entered August 4, 1947 setting the claims of interest filed by several municipalities and distributing companies, including the claim of Springfield, for hearing and determination on the same date.

At the August 19, 1947 hearing, the plan of the Master was approved and a number of claims, including the claim of Springfield, were heard and determined. Jurisdiction was reserved of the cause, the parties, and the impounded funds for the purpose of such other and further orders and decrees as might be necessary, suitable, or appropriate in the premises. Concerning the Springfield claim, an order was entered on that date with no reservation as to jurisdiction, as follows:

"5. The claims of the City Utilities of the city of Springfield, Missouri, and Wann, Oklahoma, hereby are granted, the amounts of refunds allocable to the respective 'city-gate' of each of such cities hereafter shall be fixed by order of Court."

Subsequent verification established that the excess charges on purchases made by the Springfield Gas and Electric Company amount to $290,451.91, and by City Utilities of Springfield to $512,914.46, totaling $803,-366.37, the amount which both the ultimate consumers of Springfield and Springfield claim.[2]

Following the entry of the order awarding the total amount due for distribution in the Springfield area to Springfield, petitioners filed a timely action for a declaratory judgment in the Circuit Court of Christian County, Missouri, against the City of Springfield, Missouri and members of the Board of Public Utilities of that City, seeking a judgment of the court declaring that they, as the ultimate consumers, were entitled to such impounded funds. As a result of the institution of that action, this court has retained the funds in question in the depository of the court pending the final determination of the issues therein.

A stipulation of facts was prepared by the parties and filed in that court, issues were joined, and the action was ready for trial when the Supreme Court of the United States granted certiorari in Federal Power Commission v. Interstate Natural Gas Company, et al. Thereupon further proceedings were suspended in the state court pending the decision of the Supreme Court in the Interstate Natural Gas Company case, which opinion was rendered on April 18, 1949, 336 U.S. 577, 69 S.Ct. 775. Shortly thereafter the plaintiffs in that action filed this motion for permission to intervene, together with their intervening petition and motion for summary judgment on the pleadings. They take the position that they should be permitted to intervene because under the decision of the Supreme Court in the Interstate Natural Gas Company case, supra, it is the duty of this court to determine the ultimate ownership of the impounded funds and to make distribution thereof.

In view of the conclusion we have reached on the petition for intervention, it will not be necessary to refer to or dispose of the motion for summary judgment.

In Central States Electric Company v. Muscatine, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801, the Supreme Court held that the Circuit Court lacked jurisdiction to determine the ultimate consumers' rights in such impounded funds as are involved in this action. It held that our jurisdiction was limited to the issue of ownership of such funds between the pipe line transportation company making the charge and the distributing company paying it. It held that as to others the extent of our jurisdiction in such cases was limited to holding the fund intact a reasonable time to afford other claimants a timely opportunity to litigate their rights to the fund in a tribunal having jurisdiction. However, in Federal Power Commission v. Interstate Natural Gas Company, 336 U.S. 577, 69 S.Ct. 775, 787, the Supreme Court reversed the order of the Fifth Circuit Court, 166 F.2d 796, distributing a similar fund to the distribution companies, without prejudice to such rights as others might have to hold these companies accountable for the amounts involved. The court, in effect, held that the fact that the fund consisted of payments made by the distributing companies did not entitle them to the fund as of right; that the purpose of the Natural Gas Act, 15 U.S.C. A. § 717 et seq., was to protect the ultimate consumers; that the fund having been created by the Court through the exercise of equity powers, its disposition should be made in accord with equitable principles and that the court's responsibilities to undo what had been done by its processes could not be discharged by paying the fund to those who established no loss by reason of the court's actions.

We must, however, take cognizance of the fact that the Supreme Court did not overrule the Muscatine case and that it still is in force and is the law except as modi-

---

[2] Springfield Gas and Electric Company was a privately owned and operating as company, serving the Springfield area, which was taken over during the pend-ency of these proceedings by the City, and thereafter operated as a municipally owned gas plant under the name of the City Utilities of Springfield.

fied by the Interstate Natural Gas Company case. This conclusion finds support not only in that portion of the majority opinion which distinguishes the two cases but as well in the dissenting part of Justice Black's opinion, joined in by the late Justice Murphy and Justice Rutledge, wherein he states that,

"This seems an appropriate time to reverse Central States Electric Co. v. Muscatine, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801. I regret to see that holding survive even in part."

The majority opinion in the Interstate Natural Gas Company case states that,

"First. Here, unlike Central States Electric Co. v. Muscatine, supra, the distributing companies that seek return of the fund created from their payments of the excessive rates are subject to the jurisdiction of the Federal Power Commission, since they are natural gas companies engaged in the transportation or sale at wholesale of natural gas in interstate commerce. See Illinois Natural Gas Co. v. Illinois Public Service Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371. The claims of these pipe line companies to the fund are therefore determinable solely with reference to federal law, since the Natural Gas Act, 52 Stat. 821, 15 U.S.C. § 717 [15 U.S.C.A. § 717], is designed to regulate the segment of the industry occupied by such distributors. * * * We may not therefore sustain the action of the Court of Appeals unless it is clear as a matter of federal law that the pipe line companies are entitled to the fund."

■ We, accordingly, conclude that the Muscatine case is not overruled and that it applies to those cases in which the distributing companies are local companies not engaged in commerce, while those cases in which the distributing companies claiming the fund as against the pipe line companies are engaged in commerce fall within the decision in the Interstate Natural Gas Company case. It seems to us that if the Muscatine case is to be given force and effect, the conclusion must be that in those cases

in which the local distributing companies are engaged in intrastate business only, the Federal Court is without jurisdiction to adjudicate a controversy as to the ownership of the impounded funds between such companies and the ultimate consumers, and that in such cases it should withhold distribution of the funds to afford the ultimate consumers an opportunity to have an adjudication of such controversy in a timely proceeding filed in a state tribunal of competent jurisdiction. If we are in error in this then we fail to see what, if anything, is left of the Muscatine case.

■ But in any event we think the petition for intervention should be denied. The Interstate Natural Gas Company case holds that where the rates charged by the local distributing companies are not subject to the Federal Power Commission's jurisdiction and may or may not be subject to the jurisdiction of state regulatory bodies, depending upon local law, and if the local law provides a standard for determining the ownership of such funds, the Federal Court may hold the funds, if a clear and speedy remedy is available, until the state authorities or its tribunals have had an opportunity to declare the law. It is only in the absence of a showing of such available state remedies that the Federal Court is required to proceed to determine the ownership of such funds and distribute them.

We think all of these factors are present in this case. Both the predecessor of Springfield and Springfield are local distributing companies engaged only in intrastate business and the rights of the parties are therefore determined by state law.[3] The ultimate consumers sought state courts for the adjudication of their rights; issues have been joined in that case; much work has been done in preparing a stipulation of fact and such a stipulation has been executed and has been filed in the state court. It was stated in the argument on the motion to intervene that the case has been ready for trial in the trial court and was about to proceed to trial when the Supreme Court granted certiorari in the Interstate

---

3. This is the philosophy of the Interstate Natural Gas Company case as well as of the Muscatine case.

Natural Gas Company case, and the trial was postponed only to await the decision in that case. It was further stated and it is made to appear that a trial may now be had in the Circuit Court without undue delay and that on appeal to the court of last resort a speedy determination may be had if desired by either of the parties. Furthermore, it was stated in the argument that the Missouri law does not limit a municipally owned gas company to a rate which will return only reasonable returns on the investment; that there is no state tribunal having power to regulate rates of municipally owned gas companies with power to reduce such rates to what will provide for only a reasonable return on the investment. All of these matters raise questions determining the rights of the parties to these funds which can be answered only by application of state law.

It is clear from the Natural Gas Act itself, from the Congressional discussions relating thereto, as well as from the pronouncements by the Supreme Court, that the object in passing the Act was to benefit the ultimate consumers by requiring a reduction in excessive rates charged by transportation companies to distributing companies.[4] It is also clear that the Act limited the jurisdiction of the Commission to that segment of the industry engaged in interstate commerce, and that the Commission is without jurisdiction to regulate local intrastate rates or order a reduction therein in order to give the ultimate consumers the benefit of any rate reduction ordered by the Commission in rates between the pipe line transportation companies and the distributing companies.

The plan contemplates that this reduction to the ultimate consumers would follow corresponding action by state authorities forcing an equitable reduction in local rates to the ultimate consumers.

The underlying principle which must guide us in making a distribution of these funds, as stated in the majority as well as the special concurring and dissenting opinions in the Interstate Natural Gas Company case, is that of unjust enrichment.[5] Giving the distributing companies these impounded funds, if lawfully they would have been compelled to pass them on to the ultimate consumers in reduced rates had we not interfered with the enforcement of the Commission's order, would constitute unjust enrichment. On the other hand, giving to the ultimate consumers of Springfield a part of these funds, if they would not have been entitled by law to a reduction in rates had we not interfered with the enforcement of the order, would constitute a windfall to them and would likewise constitute unjust enrichment. In other words, equity requires that we place all parties as nearly as possible where they would have been had we not stayed the Commission's order. Where the ultimate consumers would have been in this case with respect to their municipally owned gas company had the Commission's order not been suspended depends upon state law. It depends upon whether the rates charged to Springfield consumers are subject to regulation and upon whether there is state authority which could have compelled a readjustment of the local rate so as to pass on to the ultimate consumers the benefit of the new rate established by the Commission.

4 Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333; Central States Electric Co. v. Muscatine, supra; Federal Power Commission v. Interstate Natural Gas Co., supra.

5 This principle is well stated by Justice Frankfurter in his special concurring opinion, where he says:

"The task, then, for the Court of appeals is to reconstruct, as far as it can possibly be done, what would have happened had no fund accrued. Reasons of equity produced the fund; equitable considerations must determine its distribution. The governing principle is that of unjust enrichment. Since the task of the court is to place the parties in the position in which they would have been had there not been a postponement of the effective date of the rate-reduction, it is now the duty of the court to make that retrospective determination not by unfounded assumptions erected into rigid legal rules, but by an ascertainment of what actually would have happened contemporaneously had purchasers from Interstate obtained their gas at the lower rate."

Since these questions can be answered only by a look at state law, and in view of all that has transpired, as outlined above, we feel that these questions should be answered in the state forum selected by the ultimate consumers for the establishment of their rights, and that in the meantime the fund in question should remain with this court to be ultimately distributed by it in accordance with the judgment of the state court.

The petition for intervention is accordingly Denied.

PHILLIPS, Chief Judge (dissenting).

I agree that the Board of Public Utilities of the City of Springfield, Missouri,[1] is not a natural gas company engaged in the transportation or sale at wholesale of natural gas in interstate commerce, and that the instant case is not distinguishable from Central States Electric Co. v. Muscatine, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801, on that ground. I, also, recognize that the Supreme Court in Federal Power Commission v. Interstate Natural Gas Co., 336 U.S. 577, at page 580, 69 S.Ct. 775, pointed out that such case was unlike Central States Electric Co. v. Muscatine, in that the distributing companies seeking return of the refund in the Interstate Natural Gas Company case were subject to the jurisdiction of the Federal Power Commission, since they were natural gas companies engaged in the transportation or sale at wholesale of natural gas in interstate commerce. Nevertheless, I think it is the duty of this court to distribute the fund now in its custody to the ultimate consumers of gas in the City

of Springfield during the period the stay order was in effect.

In engaging in the business of supplying its inhabitants with gas, the City of Springfield acts, not in its public or governmental capacity, but in a private or proprietary capacity.[2] The rates charged by a municipal corporation operating a gas utility for gas supplied to its inhabitants are subject to regulation by the state, if the state elects to exercise that power, and must be reasonable and nondiscriminatory, and their reasonableness is subject to judicial review.[3] Therefore, I see no distinction between the rights of the ultimate consumers who took gas from the Springfield Gas & Electric Company, a private utility, and those who took gas from the Board of Public Utilities during the period the stay order was in effect.

The aim of the Natural Gas Act, 52 Stat. 821, 15 U.S.C.A. § 717, was to "protect ultimate consumers of natural gas from excessive charges," and "they were the intended beneficiaries of rate reductions ordered by the federal commission, though state machinery might have to be invoked to obtain lower rates at the consumer level."[4] The Board of Public Utilities has neither averred nor shown that the rates charged by the Springfield Gas & Electric Company and by it, during the period the stay order was in force, were so low as to be unreasonable, and no such presumption attends rates fixed pursuant to rate orders of a public regulatory body, or even by a utility itself without the compulsion of a rate order.[5] And the Board of Public Utilities does not contend that the rates charged by the

[1] Hereinafter called the Board of Public Utilities.

[2] Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 745, 18 A.L.R. 929; City of Winona v. Botzet, 8 Cir., 169 F. 321, 332, 333, 23 L.R.A.,N.S., 204; City of Logansport v. Public Service Commission, 202 Ind. 523, 177 N.E. 249, 252, 76 A.L.R. 838; Western Saving Fund Society of Philadelphia v. City of Philadelphia, 31 Pa. 175, 183, 22 Am.Dec. 730; Wood v. City of Auburn, 87 Me. 287, 32 A. 906, 907, 29 L. R.A. 376; Twohy Bros. v. Ochoco Irr. Dist., 108 Or. 1, 210 P. 873, 216 P. 189, 190; Wagner v. City of Rock Island, 146

Ill. 139, 34 N.E. 545, 548, 549, 21 L.R.A. 519.

[3] Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 746; Simons v. City Council of Charleston, 181 S.Car. 353, 187 S.E. 545, 547; Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869, 870, 96 A.L.R. 1381; City of Logansport v. Public Service Commission, 202 Ind. 523, 177 N.E. 249, 253–257, 76 A.L.R. 838.

[4] Federal Power Commission v. Interstate Natural Gas Co., 336 U.S. 577, 581, 69 S.Ct. 775.

[5] Id., 336 U.S. page 581, 69 S.Ct. page 778.

Springfield Gas & Electric Company and by it, during the period the stay order was in force, were so low that it is entitled to the refunds as a matter of law. Neither has the Public Utilities Commission averred nor shown that either it or the Springfield Gas & Electric Company passed on to the consumers in the City of Springfield rate reductions from the date of the order of the Federal Power Commission.

In the distribution of the impounded funds, which are now in the custody of this court except in so far as they have been distributed under orders of this court to consumers in other localities, it is the duty and responsibility of this court to correct the harm caused by its stay order and to protect the interests of all adversely affected by its injunction.[6] It may not discharge that duty by payment of the fund to one who has shown no loss by reason of this court's action.[7] The obligation of this court is to make disposition of the impounded funds in accordance with equitable principles.[8]

If it is the intent and purpose of the Natural Gas Act to protect ultimate consumers of natural gas from excessive charges, and to give such consumers the benefit of rate reductions ordered by the Federal Power Commission, then, it seems to me, the ultimate consumers are entitled to that protection and to the benefits of rate reductions ordered by the Federal Power Commission as a matter of Federal law. If that be true, then, in making distribution of the impounded funds, in correcting the harm done by its stay order, and in protecting the interests of those adversely affected by its injunction, it is the duty of this court, in so far as it is possible, to see that the purposes and policy of the Natural Gas Act are given effect. We will not discharge that responsibility and duty by delegating to a state court the determination of whether the Board of Public Utilities or the ultimate consumers of gas in the City of Springfield, during the period of the stay order, are entitled to the refund here in controversy.

In allowing the claim of the City of Springfield by our order of August 19, 1947, we did not intend to adjudicate and, I understand the parties concede we did not adjudicate as between the Board of Public Utilties and the ultimate consumers of gas in that City, during the period our stay order was in effect, that such ultimate consumers were not entitled to receive, either directly from the master of this court or through the Board of Public Utilities, the funds here in controversy.

For the reasons indicated, it is my conclusion that the petition to intervene should be granted.

---

[6] Id., 336 U.S. page 582, 69 S.Ct. pages 778, 779.

[7] Id.

[8] Id., 336 U.S. page 583, 69 S.Ct. page 779.