M. D. LIGHTFOOT, J. F. JONES, PETE KRITIKOS, ROBERT L. HANSON, JOHN A. STEVER, E. E. WILSON, U. R. SULLIVAN, MELVIN E. ROYSTER, JOSEPHINE HEADLEY, A. L. SMITH, MRS. RALPH REED, LILLIAN SANDAY SUTTON, J. W. HUGHLETT, MARY PHARR, SPRINGFIELD ICE AND REFRIGERATING COMPANY, a Corporation, J. V. BOSWELL, NELSON HOOVER, JOE GOLD, E. B. HARRIS, GEORGE WALTERS, SAM B. HOEFGEN, W. N. HACKNEY, L. E. WRIGHT, K. C. WRIGHT, R. W. QUIGG, J. C. WAGGONER, BEN GIFFORD, LESTER CLINE, TOM BATER and R. CANTRELL, Plaintiffs-Respondents, v. CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation, and EDWIN C. RICE, LARRY L. BLANCHETTE, LLOYD R. CARTER, CHARLES L. CHALENDER, GEORGE K. HUGHEY and WILLIAM A. LINCOLN, who constitute the Board of Public Utilities of said City, Defendants-Appellants, No. 41904—236 S. W. (2d) 348.

Division One, January 8, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, February 8, 1951.

660

*A. P. Stone, Jr.,* for appellants.

*Arch A. Johnson* and *W. D. Tatlow* for respondents.

664

[349] VAN OSDOL, C.—Plaintiffs, individually and as representatives of a class (ultimate consumers of natural gas at Springfield, Missouri), instituted this action against defendant, City of Springfield, and against City's Board of Public Utilities, seeking a judgment declaring that the ultimate consumers are entitled to a fund of $803,366.37 allocable to the "city gate" of Springfield and now held in a depository pursuant to an order of the United States Circuit Court of Appeals, Tenth Circuit. The fund represents the difference between the old stipulated rate charged for natural gas by Cities Service Gas Company and collected from the distributors, City of Springfield and its Board of Public Utilities, and their predecessor, Springfield Gas and Electric Company, and the new rate determined by the Federal Power Commission to be a rate affording Cities Service a fair and reasonable return. Cities Service Gas Company v. Federal Power Commission, 10 Cir., 155 F. 2d 694. Defendants by answer prayed for a judgment declaring that neither plaintiffs nor any ultimate gas consumers have any right, title or interest in or to the impounded fund. The trial court rendered a judgment declaring that the Board of Public Utilities of the City of Springfield is entitled to $154,822.77 of the impounded fund, and that the ultimate domestic and commercial consumers of natural gas at Springfield are entitled to $648,543.60, a $30,000 attorney fee to be paid to plaintiffs' counsel from [350] the amount which the trial court declared should be awarded to the ultimate consumers. Plaintiffs did not appeal. Defendants have perfected this appeal.

The case was tried upon stipulated facts. The stipulation of facts and appended exhibits comprise many pages. We will try to set out in the course of this opinion the facts material to our review of the cause; however, for a more extensive examination of the historical background of the instant litigation, reference may be made to Cities Service Gas Company v. Federal Power Commission, supra, as reported in 155 F. 2d 694, and in 176 F. 2d 548.

Springfield Gas and Electric Company was incorporated in 1927 and, until March 26, 1945, that company operated utility properties in Springfield, including a natural gas distribution system. Springfield Gas and Electric Company, paying a stipulated rate, purchased its natural gas for resale to local consumers in intrastate commerce from Cities Service Gas Company, an interstate wholesaler of natural gas. Since the enactment of the Natural Gas Act of 1938, 15 U. S. C. A. § 717, the Federal Power Commission has had jurisdiction over rates to be charged for natural gas supplied in interstate commerce. Springfield Gas and Electric Company resold the natural gas, so purchased from Cities Service Gas Company, to the ultimate consumers of natural gas at Springfield in intrastate commerce at rates approved by the Public Service Commission of Missouri, which Commission had jurisdiction to determine rates to be charged by the Springfield Gas and Electric Company for gas sold to the ultimate consumers in intrastate commerce.

March 26, 1945, all of the properties of Springfield Gas and Electric Company were conveyed to defendant City of Springfield including "all rights which the Springfield Company might have had, but for the aforesaid conveyance to the City, to collect and receive that portion of the funds impounded in the United States Circuit Court of Appeals for the Tenth Circuit which accrued by reason of excessive rates by Cities Service for gas furnished at wholesale to the Springfield Company prior to March 26, 1945." After City's acquisition of the utility properties, City continued to pay Cities Service for natural gas at the rate theretofore paid by Springfield Gas and Electric Company until a new contract was entered into June 28, 1947, effective as of April 23, 1947, between Cities Service and City's Board of Utilities, which contract stipulated rates approved by the Federal Power Commission.

July 28, 1943, the Federal Power Commission had entered an order effective September 1, 1943, directing Cities Service Gas Company to reduce its rates in connection with its sale of natural gas in interstate commerce to many local distributors in Kansas, Nebraska, Oklahoma and Missouri, including the local distributor, Springfield Gas and Electric Company. Cities Service instituted an action in the United States Court of Appeals for the Tenth Circuit to review the Federal Power Commission's rate-reduction order; and, upon request of Cities Service, a stay of the Federal Power Commission's

order, pending the determination of ·the action, was granted conditionally upon the monthly payments by Cities Service into a designated depository in amounts representing the difference between the old rate and the new rate ordered by the Commission. The stay order further provided that, "upon the ·final determination of this proceeding on review, such moneys (the impounded funds) shall be paid out in such manner and in such amounts as this court by further order shall direct, to the persons finally adjudged in this review proceeding to be entitled thereto and in accordance with the final adjudication with respect to the Commission's order."

Upon review, the order of the Federal Power Commission of July 28, 1943, was affirmed by the United States Circuit Court of Appeals (155 F. 2d 694). November 12, 1946, the petition of Cities Service to the Supreme Court of the United States for certiorari was denied (329 U. S. 773, 67 S. Ct. 191); and January 6, 1947, a rehearing was denied by the Supreme Court of the United States (329 U. S. 832, 67 S. Ct. 489).

[351] March 26, 1947, Cities Service filed a new schedule of rates pursuant to the affirmed order of the Federal Power Commission, which schedule, as amended, was accepted by the Federal Power Commission May 2, 1947.

August 4, 1947, a Master, appointed by the United States Circuit Court of Appeals, filed a plan for distribution of the impounded fund. The Master's plan was approved and a number of claims, including a claim of City Utilities of Springfield, were heard and determined. Concerning the Springfield claim, an order was entered as of August 19, 1947, as follows, "The claims of the City Utilities of the city of Springfield, Missouri, and * * * hereby are granted, the amounts of refunds allocable to the respective 'city-gate' of each of such cities hereafter shall be fixed by order of Court." (The granting of the claim of City Utilities of Springfield was not an adjudication that the ultimate consumers of Springfield were not entitled to receive the funds in controversy.) Subsequently, it was determined that the excess charges, allocable to the city gate at Springfield, over and above the rates as reduced by the Federal Power Commission's order of July 28, 1943, on purchases by the Springfield Gas and Electric Company amounted to $290,451.91, and on purchases by the municipal utilities of Springfield, $512,914.46, a total of $803,366.37. The Master's approved plan also made any refund to eligible customers of distributors conditional upon "a satisfactory written disclaimer" to be filed in the cause by the distributor. No such disclaimer has been filed by Springfield Gas and Electric Company, or by City of Springfield or its Board of Public Utilities.

September 30, 1947, after the order verifying the amount due for excess charges, the plaintiffs instituted the instant action. However, the Supreme Court of the United States granted the writ of certiorari

in the case of Federal Power Commission v. Interstate Natural Gas Company, and further proceedings in the instant case were suspended pending the opinion of the Supreme Court in the Interstate Natural Gas Company case, which case was decided April 18, 1949. 336 U. S. 577, 69 S. Ct. 775. After the decision in the Interstate Natural Gas Company case, plaintiffs herein filed a motion in the United States Circuit Court of Appeals for permission to intervene in the case of Cities Service Gas Company v. Federal Power Commission, supra. Movants also filed an intervening petition, and a motion for summary judgment on the pleadings. The movants-petitioners contended it was the duty of the Circuit Court of Appeals to determine the ultimate ownership of the impounded fund and to make distribution thereof. The petition for intervention was denied, the Circuit Court of Appeals holding that the fund as allocable to Springfield should remain with the Circuit Court of Appeals "to be ultimately distributed by it in accordance with the judgment of the state court." Cities Service Gas Company v. Federal Power Commission, supra, 176 F. 2d 548, at page 553.

Plaintiffs-respondents are right in saying that the Congressional objective in passing the Natural Gas Act was to benefit ultimate consumers by requiring a reduction in excessive rates charged in interstate transportation or sales to distributors. We can here say the Federal Power Commission's rate-reduction order of July 28, 1943, has been of tremendous benefit to the ultimate consumers of natural gas in Missouri. [As an example, effective June 16, 1947, less than six months after the Supreme Court of the United States had denied a rehearing in the case of Cities Service Gas Company v. Federal Power Commission (329 U. S. 832, 67 S. Ct. 489), the City Council of Springfield approved a schedule of rates to consumers of gas, which schedule effected a reduction of approximately $100,000 a year in gross revenue.] Respondents are mistaken, however, in saying that the "overall rate" (as respondents term the rate prescribed by the Public Service Commission of Missouri to be charged by the utility at Springfield in serving its customers, the local ultimate consumers at Springfield) was on July 28, 1943, modified and reduced by the order of the Federal Power Commission. The Natural Gas Act was so framed and enacted as to complement and in no manner usurp [352] state regulatory authority. It is clear the Act limited the jurisdiction of the Federal Power Commission to that segment of the industry engaged in interstate commerce and that the Federal Power Commission is without jurisdiction to regulate local intrastate rates or order a reduction thereof in order to give the ultimate consumers the benefit of any rate reduction ordered by such Commission in rates between interstate wholesalers and local intrastate distributors of natural gas. Federal Power Commission v. Interstate Natural Gas Company, supra; Central States Electric Co. v. City of Muscatine,

324 U. S. 138, 65 S. Ct. 565; Federal Power Commission v. Hope Natural Gas Co., 320 U. S. 591, 64 S. Ct. 281; Public Utilities Commission v. United Fuel Gas Co., 317 U. S. 456, 63 S. Ct. 369; Cities Service Gas Company v. Federal Power Commission, supra, 176 F. 2d 548.

In Federal Power Commission v. Interstate Natural Gas Company, supra, a case greatly relied upon by respondents, the distributors who sought return of the fund created from their payments of excessive rates were subject to the jurisdiction of the Federal Power Commission and their claims to the fund were solely determinable by federal law, since they were natural gas companies engaged in transportation or sale at wholesale of natural gas in interstate commerce. In the instant case the local distributors, appellants, who seek the return of the fund created from their payments of excessive rates, were and are engaged in the sale of natural gas in intrastate commerce. They were and are subject to the jurisdiction of state regulatory bodies with respect to the distributors' relations with their customers, and their claims to the fund in controversy are determinable by state law as were the local distributors and their claims in the case of Central States Electric Co. v. City of Muscatine, supra.

The United States Circuit Court of Appeals has announced it will make distribution of the impounded fund, allocated to Springfield, being guided by the underlying principle of unjust enrichment. Cities Service Gas Company v. Federal Power Commission, supra. In this connection that Court said,

"Giving the distributing companies these impounded funds, if lawfully they would have been compelled to pass them on to the ultimate consumers in reduced rates had we not interfered with the enforcement of the Commission's order, would constitute unjust enrichment. On the other hand, giving to the ultimate consumers of Springfield a part of these funds, if they would not have been entitled by law to a reduction in rates had we not interfered with the enforcement of the order, would constitute a windfall to them and would likewise constitute unjust enrichment. In other words, equity requires that we place all parties as nearly as possible where they would have been had we not stayed the Commission's order. Where the ultimate consumers would have been in this case with respect to their municipally owned gas company had the Commission's order not been suspended depends upon state law. It depends upon whether the rates charged to Springfield consumers are subject to regulation and upon whether there is state authority which could have compelled a readjustment of the local rate so as to pass on to the ultimate consumers the benefit of the new rate established by the Commission." 176 F. 2d 548, at page 552.

In our state the legislative function of fixing just and reasonable rates of privately owned public utilities is vested in the Public Service Commission of Missouri by our Public Service Commission Law. See Chapter 35, R. S. 1939, particularly Sections 5592, 5645, 5646, 5647 and 5690, Mo. R. S. A. Chap. 35, §§ 5592, 5645, 5646, 5647 and 5690. The Public Service Commission has no power to declare or enforce any principle of law or equity. The ultimate return to the utility as a result of the rate fixed and subsequently charged and collected will necessarily vary from time to time. "The law, of course, did not require that the rates at any time yield any particular return." State ex rel. Capital City Water Co. v. Public Service Commission, 298 Mo. 524, 252 S. W. 446. Where the utility is municipally owned, the legislative function of fixing rates is in the municipality to be in no way affected by any [**353**] regulation "except the will of its own citizens." Missouri Power & Light Co. v. City of Pattonsburg, 343 Mo. 1128, 125 S. W. 2d 20; State ex rel. City of Sikeston v. Public Service Commission, 336 Mo. 985, 82 S. W. 2d 105. Generally the appropriate legislative officers of the municipality fix the rates and change them from time to time as the operation of the utility may require. The Board of Public Utilities of the City of Springfield presently has the power to fix rates subject to the approval of the City Council. Laws of Missouri 1945, p. 1272, Mo. R. S. A. § 6610.6. After the City of Springfield acquired the Springfield utilities, the City Council fixed the rates until the creation of City's Board of Public Utilities, April 1, 1946.

The cost of some commodity (for example, natural gas) essential to the operation of a utility may vary and for some reason become less than the cost at the time the rates to consumers are fixed or approved by the Public Service Commission (or other regulatory authorities, such as a city, or a city's board of public utilities) in the exericse of its rate-making powers in the utility's intrastate sales of natural gas in Missouri. The Commission (or other regulatory authority) in the exercise of its rate-making powers may modify or change the rate to consumers, the Commission having in mind such reduced operation cost and other ever-changing operation costs and the ever-changing rate base to be considered in fixing rates. In this manner the Commission may in some measure pass on to the ultimate consumers the benefit of the utility's reduced operating costs. The Commission fixes rates prospectively and not retroactively. Our courts do not fix rates. Our courts may only review, and affirm or set aside or reverse and remand the Commission's rate-fixing orders. Our courts cannot make the Commission do retroactively and our courts cannot retroactively do that which the Commission, or other rate-making body, only does prospectively. And we believe we cannot determine the ownership of the funds in controversy upon a basis of an investigation of what a regulatory authority might have done but

for the stay of the Federal Power Commission's order. This is because, as we understand it, property rights devolve upon effective lawful rate-fixing orders. Straube v. Bowling Green Gas Co., 360 Mo. 132, 227 S. W. 2d 666.

(By Public Service Commission's Supplemental Report and Order of April 24, 1944, the gross operating revenue of Springfield Gas and Electric Company's "Gas Department" was reduced by $31,000 for the year 1944, and, by the Commission's Supplemental Report and Order of May 7, 1945, the gross operating revenue of the Gas Department of the Company was reduced in an amount computed at the rate of $3000 per month for the year 1945. The City Council of Springfield by ordinance, effective April 1, 1946, determined new and reduced rates to domestic and commercial consumers at Springfield. We cannot say the orders and ordinance were promulgated or enacted in any contemplation of the reduction of interstate rates as ordered by the Federal Power Commission.)

It is true, as respondents urge, that the monthly payments by Cities Service into the depository designated by the United States Circuit Court of Appeals were, in a sense, conditional upon that Court's action in the review of the order of the Federal Power Commission. But the money paid into the impounded fund by Cities Service had been paid to Cities Service by the Springfield utility out of its own funds. Respondents, ultimate consumers of gas at Springfield, were not making conditional payments for the gas furnished them by the Springfield Gas and Electric Company and by the City Utilities of Springfield in accordance with the effective rates approved by the Public Service Commission and by the City Council and the Board of Public Utilities of Springfield.

No ultimate consumer had ever made a request or a demand that any of the money collected by the utility from its customers at Springfield in accordance with rate schedules in force and effect as approved by the Public Service Commission, or as fixed by the City Council of Springfield or by City's Board of Public Utilities, should be ordered set apart, segregated or [354] impounded to await the event of the decision upon the review of the Federal Power Commission's order. And neither the Public Service Commission nor City Council of Springfield or Springfield's Board of Public Utilities has made such an order. The money collected by the utility at Springfield came into its hands unconditionally. There is no. allegation, stipulated fact or contention tending to support any inference of any taint of fraud in the action or in the procurance of the action of the rate regulatory authorities in establishing or approving the rates charged. We think it could not be soundly said there was anything wrongful in the collection of money by the Springfield utility pursuant to the rates as effectuated by the respective rate-making

authorities of Missouri. Respondents were paying to the local utility that to which it was lawfully entitled.

We are of the opinion that Springfield Gas and Electric Company, and defendants-appellants, City and Board of Public Utilities of Springfield, lawfully and unconditionally came into the possession, custody and control of the moneys paid by respondents for gas furnished them in intrastate commerce pursuant to lawful rates fixed by rate-making authorities of Missouri. There was no encroachment upon the rights of respondents. They have paid no more than the rates lawfully in effect. In our opinion the money so unconditionally paid as prescribed by the lawfully promulgated and effective rates became and was the property of the distributors, appellants. We cannot ignore our regulatory laws, and we will give effect to constitutional provisions as we understand them. We have said that when the established rate of a utility has been followed, the amount so collected becomes the property of the utility, of which it cannot be deprived by either legislative or court action without violating the due process provisions of the state and federal constitutions. Straube v. Bowling Green Gas Co., supra.

It is our view that, if the impounded fund in controversy or a part thereof were paid over to respondents, it would "constitute a windfall to them and would likewise constitute unjust enrichment."

The judgment should be reversed and the cause remanded with directions to enter a declaratory judgment in harmony with this opinion.

It is so ordered. *Lozier* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.