## PENNSYLVANIA WATER & POWER CO. et al. v. FEDERAL POWER COMMISSION et al.

## PENNSYLVANIA PUBLIC UTILITY COMMISSION v. FEDERAL POWER COMMISSION et al.
### Nos. 10236, 10239.

United States Court of Appeals
District of Columbia Circuit.

March 6, 1953.

220

See also, 89 U.S.App.D.C. 235, 193 F.2d 230.

Before WILBUR K. MILLER, BAZE-LON and FAHY, Circuit Judges, in Chambers.

## ORDER

Upon consideration of the Plan of Distribution of Segregated Funds Involving Three Pennsylvania Utilities Customers, jointly submitted to the court, pursuant to its order of October 30, 1952, by the Pennsylvania Public Utility Commission and the Federal Power Commission, and consented to by the intervenors Philadelphia Electric Company, Metropolitan Edison Company and Pennsylvania Power & Light Company, but slightly modified by the court and as so modified also consented to as evidenced by the endorsements hereon, it is by the court

ORDERED:

1. That funds impounded by petitioner, Pennsylvania Water & Power Company, with respect to the intervenors Pennsylvania Power & Light Company, Metropolitan Edison Company and Philadelphia Electric Company, together with actual earnings thereon, be promptly distributed and paid by petitioner to said intervenors, said funds being in the following amounts as of January 8, 1953:

| | Amount Segregated (Exclusive of Earnings from investment of segregated Funds) | Earnings from Investment of Segregated Funds to Jan. 8, 1953 | Total |
|---|---|---|---|
| Pennsylvania Power & Light Company | $684,614.61 | $23,786.43 | $708,401.04 |
| Metropolitan Edison Company | 340,565.71 | 9,144.42 | 349,710.13 |
| Philadelphia Electric Company | 808,422.76 | 28,199.17 | 836,621.93 |

*Provided*, that there shall be added to the above amounts any additional amounts segregated and any additional earnings to the date of this order.

2. That such distribution and payments shall be made upon the following terms and conditions:

(a) Each such intervenor shall set up on its books of account a special reserve in an amount equal to the aggregate of the amount or amounts received by it under the order or orders of the court, less any state and federal income taxes paid thereon, and shall maintain such reserve for twenty years commencing December 31, 1952, and thereafter until extinguished by four equal annual credits therefrom to earned surplus commencing December 31, 1973, and continuing on each December 31 thereafter ending with December 31, 1976.

(b) Each intervenor shall deduct the amount in such special reserve from the base upon which it would otherwise seek or claim a right to earn a fair return for the purpose of all proposals or claims of rates or modifications or changes in rates and each Commission shall deduct the amount in such special reserve from the base upon which a fair return would otherwise be allowable for all rate regulatory purposes with respect to each such intervenor.

3. That petitioner shall promptly file with the clerk of this court and serve on all parties herein a statement in writing of the dates and amounts of payments and the names of the parties to whom payments were made pursuant to this order.

Dated: March 6, 1953.

Per Curiam.
We consent.

Lloyd Benjamin
Counsel
William J. Grove        by Raymond
Assistant Counsel        Sparks
Thomas M. Kerrigan
Ass't. Counsel

Counsel for Pennsylvania
Public Utility Commission

Howard E. Wahrenbrock
Counsel for Federal Power Commission

Raymond Sparks
Counsel for Pennsylvania Water & Power Company

Harry A. Poth, Jr.
Counsel for Pennsylvania Power & Light Company

Paul R. Connally
Counsel for Philadelphia Electric Company

Paul R. Connally
Counsel for Metropolitan Edison Company

Circuit Judge WILBUR K. MILLER dissents from the foregoing order for the reasons indicated in his opinion this day filed herein.

Circuit Judge FAHY filed a memorandum stating the position of Judge BAZELON and himself in entering the foregoing order.

Memorandum of Circuit Judge FAHY
in support of order of distribution
entered herein March 6, 1953.

FAHY, Circuit Judge.

Judge MILLER'S opinion dissenting from the order for partial distribution leads me to file this memorandum giving the reasons for my approval of the order. The order adopts with minor changes a plan for distribution jointly submitted to the court by the Pennsylvania Public Utility Commission and the Federal Power Commission. The order in its final form bears the consents of these two Commissions and also of the Pennsylvania Water & Power Company, the Pennsylvania Power & Light Company, the Philadelphia Electric Company, and the Metropolitan Edison Company, all by counsel.[1] Neither the Federal nor State Commission nor any other party to the case objects to the order.

Whether or not a majority of the court displayed at some point an inclination to invite the Federal Power Commission alone to formulate a plan for distribution the fact is that after full consideration our order of October 30, 1952, requested the Federal and Pennsylvania Commissions jointly insofar as possible but separately to the extent that they were unable to agree, to present a plan consistent with law.

The fund grew out of our order of April 29, 1949, which required amounts paid by the utility companies to the Pennsylvania Water & Power Company, in excess of rates the latter was authorized to charge under the Federal Commission's order, to be segregated pending outcome of the litigation over the validity of the rates so authorized. The Federal Commission's order

[1] Hereinafter the last three named Pennsylvania utility companies are referred to as the utility companies.

was sustained by this court and then by the Supreme Court, 1952, 343 U.S. 414, 72 S.Ct. 843, 96 L.Ed. 1042. The segregated funds therefore became distributable. Our jurisdiction over their distribution is coincident with our unquestionable jurisdiction over the rates out of which the funds grew. Though this does not empower us to direct a particular method of distribution which is beyond our power, I think it clear that the plan we now approve is well within our power under the decision of the Supreme Court in Federal Power Comm. v. Interstate Gas Co., 1949, 336 U.S. 577, 581–583, 69 S.Ct. 775, 93 L.Ed. 895; and see, also, concurring opinion of Mr. Justice Frankfurter, 336 U.S. at page 589, 69 S.Ct. at page 781. Here, as in that case, to borrow the language of the Supreme Court, "the intended beneficiaries of rate reductions ordered by the federal commission" are the ultimate consumers, "though state machinery might have to be invoked to obtain lower rates at the consumer level." 336 U.S. at page 581, 69 S.Ct. at page 778. Disclaiming any authority to determine the reasonableness of rates not before it, that is, rates charged to their own consumers by the companies whose excess payments to the regulated utility made up the fund to be distributed, the Supreme Court held nevertheless that the federal court under whose order the fund arose "assumes the duty to make disposition of the fund in accord with equitable principles." Such principles were ruled to include if need be consideration of reasonableness of rates when that was ancillary "to the problem of determining what claimants are equitably entitled to share" in the fund. The situation before us is in all essentials the same. The fact, then, that the reserve provided for in our order of distribution will affect local rates charged by the utility companies to ultimate consumers, over which rates as such the Federal Commission does not have jurisdiction, but which are paid by those for whose benefit it does exercise its jurisdiction under Federal law, 336 U.S. 581, 69 S.Ct. 775, not only does not render our order invalid but brings it within the equitable principles stated by the Supreme Court to be duty of the court to apply.

In Central States Elec. Co. v. Muscatine, 1945, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801, the court had before it a legal controversy initiated by a local distributor. It was this local contest over which the Supreme Court said the Circuit Court did not have jurisdiction. Here there is no such contest. Moreover, insofar as it might otherwise have been applicable, and we do not think it would have been applicable at all, the Muscatine case must be deemed to have been either overruled or distinguished in Federal Power Comm. v. Interstate Gas Co., supra.

Finally I should like to add that our present order is not imposed upon, dictated to or the result of compulsion upon the Pennsylvania Utility Commission or the three utility companies. I assume their consents arise from their judgment as to what is an "equitable and efficient distribution, consistent with applicable law", the criteria laid down in our order of October 30, 1952.

I am authorized to say that Judge BAZELON joins in the views expressed in this memorandum.

Opinion of Circuit Judge WILBUR K. MILLER dissenting from the order of distribution entered herein March 6, 1953.

WILBUR K. MILLER, Circuit Judge (dissenting).

Upon judicial review, the Federal Power Commission's rate reduction order addressed to Pennsylvania Water & Power Company was finally sustained. 89 U.S. App.D.C. 235, 193 F.2d 230, affirmed 1952, 343 U.S. 414, 72 S.Ct. 843, 96 L.Ed. 1042. A fund of several million dollars accumulated under our *pendente lite* stay order which ended June 25, 1952. The court now directs a partial distribution of the segregated fund, with which I am in accord; but it attaches terms and conditions to the refunds with which I cannot agree.

In August, 1952, some sixty days after the end of the stay order, we held an informal conference with all those interested in this matter, at which the Pennsylvania Public Utility Commission, Metropolitan

Edison Company, Philadelphia Electric Company and Pennsylvania Power & Light Company were represented, although the three companies were not parties to this proceeding. The three utilities urged that Penn Water be ordered to make refunds to them forthwith, as they were not concerned with the Maryland portion of the segregated fund, the refund of which presented some difficulties. In this they were seconded by the Pennsylvania Commission. A majority of the court indicated, however, an inclination to invite the Federal Power Commission to formulate a plan of distribution.

On September 15, 1952, we permitted Metropolitan Edison, Philadelphia Electric and Pennsylvania Power & Light to intervene for the purpose of presenting their claims to a portion of the segregated fund, whereupon they filed petitions for immediate refund. They represented themselves as being subject to the jurisdiction of the Pennsylvania Commission,[1] since their business was predominantly in Pennsylvania, and urged us to refer the matter of refund to that Commission, if reference were thought necessary.

Nevertheless, on October 30, 1952, the court entered an order, over my protest, which included the following:

> "The Federal Power Commission and the Pennsylvania Public Utility Commission are hereby requested jointly to consider and jointly, insofar as possible, separately to the extent they are unable to agree, to present to this court within sixty days a plan to effectuate the equitable and efficient distribution, consistent with applicable law, of the funds impounded or to be impounded pursuant to the order of this court of April 29, 1949, resulting from the transactions between Pennsylvania Power & Light Company, Metropolitan Edison Company, and Philadelphia Electric Company, intervenors herein; and Pennsylvania Water & Power Company, petitioner herein."

I appended to that order a memorandum opinion of partial dissent, in which I said:

> "I agree that we should dissolve our injunction of September 15, 1952, which prohibited Pennsylvania Water & Power Company from prosecuting the actions pending in the United States District Court for the District of Maryland, but I disagree with the remainder of the order. It is my view that we should not request the Federal Power Commission and the Pennsylvania Commission jointly to formulate and present a plan for the disposition of the segregated funds which were paid in by the three Pennsylvania utilities. I think we should order Pennsylvania Water & Power Company immediately to distribute such funds to the utilities from which they were collected. We may be confident that the Pennsylvania Commission will be alert to protect the interests of the customers of the three utilities.

> "In like manner, I think we should not request the Federal Power Commission and the Maryland Commission jointly to formulate and present a plan for the distribution of the segregated funds paid, or to be paid hereafter, by Consolidated Gas Electric Light and Power Company of Baltimore. We should await the final determination of the two actions now pending in the Baltimore District Court, and of any other actions which may be instituted which affect the rights and liabilities of Consolidated and Penn Water under the contract which governed their relation during the stay period. When the differences between the parties have been resolved by final judgments in those cases, we will be in a position to direct the disposition of the segregated

---

1. I suppose nobody would seriously say the Federal Power Commission has regulatory power over these Pennsylvania companies. Connecticut Light & Power Co. v. Federal Power Commission, 1945, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150.

funds. We may be sure that the Maryland Commission will at that time protect the interests of the ultimate consumers, the retail customers of Consolidated.

"I see no occasion to invite the participation of the Federal Power Commission in either situation, as it seems to me that each state commission may be relied upon to take such action for the protection of the retail customers of the utilities as governing statutes permit."

The order now being entered requires each of the three Pennsylvania utilities to keep the sum refunded to it in a special reserve for twenty years, and then to extinguish it by four equal annual credits to earned surplus; and requires each utility *and the Pennsylvania Commission* to deduct the special reserve from the rate base. This amounts to an adjudication by this court that the utilities are not really entitled to the refunds—at least not for twenty-four years—and that their retail customers are entitled to the indirect benefit which the arrangement gives them.

We have no right, in my opinion, to impose these conditions. In Central States Electric Co. v. City of Muscatine, 1945, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801, the Supreme Court held that the Seventh Circuit Court of Appeals, which had impounded *pendente lite* amounts paid to a natural gas company by a local distributor in excess of lawful rates, was without jurisdiction to adjudicate the rights of the local distributor's retail customers in the fund.

The later case of Federal Power Commission v. Interstate Natural Gas Co., 1949, 336 U.S. 577, 69 S.Ct. 775, 93 L.Ed. 895, is not to the contrary. That case involved the proper disposition of a fund accumulated under a stay order issued by the Fifth Circuit Court of Appeals, 166 F.2d 796, pending review of a rate order issued by the Power Commission. The opinion said, 336 U.S. at page 580, 69 S. Ct. at page 777:

"* * * Here, unlike Central States Electric Co. v. Muscatine, su-

pra, the distributing companies that seek return of the fund created from their payments of the excessive rates are subject to the jurisdiction of the Federal Power Commission, since they are natural gas companies engaged in the transportation or sale at wholesale of natural gas in interstate commerce."

The Court held, therefore, that in 336 U.S. at page 584, 69 S.Ct. at page 779,

"* * * The federal court may in its discretion disburse the funds directly to either the local distributing companies or the ultimate consumers or work out an administrative scheme whereby the distribution is made pursuant to directives of state agencies."

It will be observed that the Interstate case opinion did not overrule, but distinguished, the Muscatine case. This is emphasized by the fact that the three justices who dissented in the Interstate case and who were among the dissenters in Muscatine, said, 336 U.S. at page 600, 69 S.Ct. at page 787: "This seems an appropriate time to reverse Central States Electric Co. v. Muscatine, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801. [We] regret to see that holding survive even in part."

The Court of Appeals for the Tenth Circuit, in Cities Service Gas Co. v. Federal Power Commission, 1949, 176 F.2d 548, carefully analyzed the Muscatine and Interstate Natural Gas cases and concluded that the Muscatine decision had not been overruled. The court then said, 176 F.2d at page 551:

"* * * It seems to us that if the Muscatine case is to be given force and effect, the conclusion must be that in those cases in which the local distributing companies are engaged in intrastate business only, the Federal Court is without jurisdiction to adjudicate a controversy as to the ownership of the impounded funds between such companies and the ultimate consumers, and that in such cases it should withhold distribution of the funds to afford the ultimate consumers an opportunity to have an

adjudication of such controversy in a timely proceeding filed in a state tribunal of competent jurisdiction. If we are in error in this then we fail to see what, if anything, is left of the Muscatine case."

The principle thus stated seems to me to be sound, and I think it is applicable in the present case.

The Pennsylvania Commission has concurred with the Federal Power Commission in suggesting the limitations which this court now places upon the refund to the Pennsylvania utility customers, and those customers have consented to the qualified refund. It seems clear, however, that the Pennsylvania Commission and the three Pennsylvania utilities have agreed to the Federal Power Commission's plan because of the compulsion of our order of October 30, 1952. The concurrence of the Pennsylvania Commission probably indicates that it would restrict the use of the refunds in the same fashion, even if we should order the payments made without limitation as to their disposition.[2] Whether so or not is immaterial for present purposes; the principle involved is the important thing, and the point is that we have no authority to condition the refunds nor to order the Pennsylvania Commission to deduct the special reserves from the rate bases. The parties cannot confer such jurisdiction upon us by consent.

The policy provisions of the Federal Power Act show that Congress did not intend to impinge upon the right of the states to regulate their own domestic utilities.[3] I think, therefore, that the participation of the Federal Power Commission in the formulation of this plan, and this court's dictation to the Pennsylvania companies and the Pennsylvania Commission as to the disposition of the sums refunded, constitute an intrusion by the Federal Power Commission and by us into the exclusive jurisdiction of the Pennsylvania Commission. I am not willing to agree to such intrusion and for that reason I dissent from the order imposing conditions upon the refunds.

2. In that event, however, the state commission's order would presumably be reviewable in the Pennsylvania courts, whereas our restrictive order can be reviewed only by the Supreme Court of the United States.

3. 16 U.S.C.A. § 791 et seq. The Muscatine case makes a similar observation with respect to the Natural Gas Act, 15 U.S.C.A. § 717 et seq. The Supreme Court said, 324 U.S. at page 144, 65 S.Ct. at page 568:

"The Natural Gas Act clearly discloses that, though its purpose may have been to protect the ultimate consumer at retail, the means adopted was limited to the regulation of sales in interstate commerce at wholesale, leaving to the states the function of regulating the intrastate distribution and sale of the commodity. That Congress intended to leave intrastate transactions to state regulation is clear * * *."